**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

DOUGLAS BAKER, as guardian            )
and conservator for RICHARD BAKER,    )
                                      )
                    Plaintiff(s),     )
v.                                    )          CASE NO.: _____
                                      )
ALAN CHIN, LILLIAN YUEN,              )
LINDA LEONG, CONNIE GEREAUX,          )          DIVISION: _____
MICHAEL LEONG,                        )
ENVIROGUARD, LLC,                     )
a Washington Limited Liability Company, )
and MILLENNIUM GREEN, LLC, a          )
Washington Limited Liability Company, )
                                      )
                    Defendants.       )

**COMPLAINT AND JURY DEMAND**
(28 U.S.C. § 1332; Diversity of Citizenship)

**I. PARTIES TO THIS COMPLAINT**

**A. THE PLAINTIFF(S):**

1.      RICHARD BAKER is a natural person and a retired chiropractor who has been diagnosed with moderate to severe dementia. He is currently a resident at The Windsor in Lawrence, KS, where he is in memory care. He is a citizen of the state of Kansas, where he resides and is domiciled.

2.      DOUGLAS BAKER is a natural person. He is RICHARD BAKER'S first cousin and was appointed guardian and conservator for RICHARD BAKER. He is a citizen of the state of Kansas, where he resides and is domiciled.

**B. THE DEFENDANTS:**

3.      ALAN CHIN is a natural person who, upon information and belief, resides at 5010 57th Ave. S., Seattle, WA 98118. He started a company called ENVIROGUARD, LLC,

1

purportedly formed to distribute Willard's Water to China. (LILLIAN YUEN and ALAN CHIN each own 45% of ENVIROGUARD.)

4.      LILLIAN YUEN is a natural person who, upon information and belief, resides at 5010 57th Ave. S., Seattle, WA 98118.  Along with ALAN CHIN, they are a husband-and-wife team who started a company called ENVIROGUARD, LLC, purportedly formed to distribute Willard's Water to China. (LILLIAN YUEN and ALAN CHIN each own 45% of ENVIROGUARD, LLC.)

5.      LINDA LEONG is LILLIAN YUEN'S sister and is a natural person who resides at 5140 125th Ave. SE, Bellevue, WA 98006.  She owns 10% of ENVIROGUARD, LLC.

6.      MICHAEL LEONG is LINDA LEONG'S husband.  He is an attorney, and his office address is 1040 S. Henderson Street, Seattle, WA 98108.

7.      CONNIE GEREAUX is a natural person and is best friends with LINDA LEONG. ALAN CHIN, LILLIAN YUEN, and LINDA LEONG introduced RICHARD BAKER to CONNIE GEREAUX in November 2020. CONNIE GEREAUX became physically intimate with RICHARD BAKER almost immediately. CONNIE GEREAUX was instrumental in getting RICHARD BAKER to sign a Power of Attorney with herself as one of three POAs. (The other two POAs were LARRY MCENROE, first cousin who grew up with RICHARD BAKER in Kansas City, a retired attorney, and DOUGLAS BAKER, also a first cousin of RICHARD BAKER.)

8.      The preceding Defendants will be referenced herein as the "natural person Defendants."

9.      ENVIROGUARD, LLC is a Washington Limited Liability Company with LILLIAN YUEN as its registered agent, having a street address of 5010 57TH AVE S, SEATTLE, WA, 98118-2120, UNITED STATES. The governors are LILLIAN YUEN and ALAN CHIN.

10.     MILLENNIUM GREEN, LLC is a Washington Limited Liability Company with ALAN CHIN as its registered agent, having a street address of 5010 57TH AVE S, SEATTLE, WA, 98118-2120, UNITED STATES. The governors are LILLIAN YUEN and ALAN CHIN.

11.     The two preceding Limited Liability Company Defendants will be referenced herein as the "corporate Defendants."

## II. BASIS FOR JURISDICTION

12.     As per the facts noted above, there is jurisdiction under 28 U.S.C. § 1332, as this is a case in which a citizen of one State sues citizens of another State and the amount in controversy exceeds $75,000, as noted below.

13.     As noted in the background facts stated, *infra*, the amount in controversy-the amount the plaintiff claims the defendant owes or the amount at stake-is more than $75,000, not counting interest and costs of court, resulting in a diversity of citizenship case.

## III. BACKGROUND FACTS AND ALLEGATIONS

14.     **SUMMARY OF THE BACKGROUND ALLEGATIONS**: As noted in the facts set forth below, the natural person Defendants, *i.e.*, LILLIAN YUEN, ALAN CHIN, LINDA LEONG, and CONNIE GEREAUX, worked in concert to benefit themselves at the expense of RICHARD BAKER, gaining his confidence through false statements, through the establishment of fiduciary relationships, through the establishment of personal/confidential relationships, and by taking advantage of his dementia. The natural person Defendants also used the corporate Defendants and

POAs referenced below as instrumentalities to appropriate the wrongfully taken moneys from RICHARD BAKER, using ENVIROGUARD, LLC as a prop in their sham to sell Willard Water in China—*something that was, per the inferences raised in the facts below, a deception*—and then ultimately moving funds to their benefit via the bank accounts associated with the corporate Defendants, even writing checks to their personal benefit and use, and also benefiting themselves at RICHARD BAKER'S expense by means of the referenced POAs.

15.     RICHARD BAKER is a retired chiropractor who continued to treat patients at his home after retiring. He suffered from dementia at all times referenced *infra*, wherein he dealt with the natural person Defendants and/or the corporate Defendants that are tied to the natural person Defendants.

16.     Prior to the circumstances referenced, *infra*, one of RICHARD BAKER's patients LILLIAN YUEN, along with her husband, ALAN CHIN, presented themselves to RICHARD BAKER as "real movers and shakers with major contacts in China." This presentation of being "real movers and shakers, with major contacts in China," however, was part of an artifice and a sham that they used to lure RICHARD BAKER in believing that he could do business with them in China (*something that the circumstances indicate—through many inferences—that they had no real intention or ability of actually pursuing*), which was part of what they wanted him to believe so as to provide them with access to his money.

17.     On or about May of 2018, RICHARD BAKER communicated with ALAN CHIN, LILLIAN YUEN, and LINDA LEONG about Willard's Water, a product that he had been using and endorsing for patients for nearly twenty years.

18.     On or about October of 2018, LILLIAN YUEN and ALAN CHIN stated that they could market the product in China due to their contacts there. (As noted, *infra*, this was a false

and/or deceptive statement used to gain RICHARD BAKER's trust in their business capabilities and ultimately provide them with access to his money, luring him into investing in ENVIROGUARD, LLC.)

19.     In November of 2018, LILLIAN YUEN and ALAN CHIN convinced RICHARD BAKER to endorse an Edward Jones check in the amount of $262,252.25 to them, which check was directly deposited in ENVIROGUARD, LLC'S bank account at Bank of America.[1]

20.     Upon information and belief, the purported purpose of the check referenced in the preceding paragraph was to establish a distribution network for Willard's Water in China, being paid as per the terms of the notes listed below, along with investment in ENVIROGUARD, LLC, where RICHARD BAKER was promised that he would make millions through ENVIROGUARD, LLC, being promised equity in ENVIROGUARD, LLC in exchange for providing the promissory note.

21.     Within a very short period of time after the money was deposited in the ENVIROGUARD, LLC account, checks were written from that account to LILLIAN YUEN and/or ALAN CHIN, essentially emptying the account of the moneys deposited.  Upon information and belief, this short period of time was less than a month. (These facts raise the inference that the communications with regard to Willard Water and ENVIROGUARD, LLC were a sham and a deception, as the money was taken out of the purported investment/business vehicle and transferred to personal use in such a short period that it is indicated to have been the intent all along.)[2]

---

[1] At this point, LILLIAN YUEN had already been appointed POA for RICHARD BAKER on account of his dementia, being so appointed in June of 2018.

[2] The fact that the moneys were so transferred was not known until shortly before the filing of this complaint.

22.     LILLIAN YUEN and ALAN CHIN executed a promissory note for $262,252.25 in November of 2018 on behalf of ENVIROGUARD, LLC. The note was duly attested and notarized and was personally guaranteed by LILLIAN YUEN and ALAN CHIN. The note is annexed as **EXHIBIT 1**.

23.     Upon information and belief, the notes and the corporate documents for ENVIROGUARD, LLC were written by MICHAEL LEONG, who is married to LINDA LEONG. This raises an inference that he knew that RICHARD BAKER was not actually receiving an equity interest and that he nonetheless assisted in that end by drafting the documents concerned.

24.     CONNIE GEREAUX was introduced to RICHARD BAKER by LINDA LEONG at or about this time, *i.e.*, November 2018.  LINDA LEONG told RICHARD BAKER that they knew of a beautiful woman that could live with him and help him with his affairs.  CONNIE GEREAUX began sleeping with RICHARD BAKER almost immediately, which raises the inference that she did so to gain influence and control over RICHARD BAKER to benefit those who had placed her in his life.

25.     LILLIAN YUEN had been appointed a Power of Attorney (POA) for RICHARD BAKER'S in the summer of 2018, *before* she and ALAN CHIN executed the promissory note in November of 2018, and, therefore, she had a fiduciary duty to protect his interests.

26.     As noted, LILLIAN YUEN, her sister LINDA LEONG, and ALAN CHIN are the only members of ENVIROGUARD, LLC.

27.     The aforementioned note was to include repayment with 24 monthly installments at 6.5% interest and the principal as well. *See* **EXHIBIT 1**. Although 24 monthly payments for interest in the sum of $2,000 each were made, no principal payments have been made.  (This raises

the inference that no principal was ever intended to be paid by either LILLIAN YUEN, ALAN CHIN, or ENVIROGUARD, LLC.)

28.     Shortly after the money had been deposited in the ENVIROGUARD, LLC account at Bank of America, LILLIAN YUEN and ALAN CHIN told RICHARD BAKER that they could not make a deal with Willard's Water, which was a lie, as Willard's Water had indeed offered them the opportunity to enter a distribution agreement if they would agree to the terms.  This happened a month or two after they received the money from RICHARD BAKER and after they had pulled the money out of the ENVIROGUARD, LLC account. As such, an inference arises that they never intended to pursue Willard Water and used it as an excuse and sham to take RICHARD BAKER'S money.

29.     Certain facts concerning CHARLES SUNDE, who is an authorized distributor Willard Water as noted below, are significant as they raise the inference that LILLIAN YUEN and ALAN CHIN never intended to go through with any Willard Water business but simply used the trip as an artifice and as a sham to induce RICHARD BAKER to provide them with money.  The **CHARLES SUNDE FACTS** are noted *infra*:

a.  CHARLES SUNDE is an authorized distributor of Willard Water who became acquainted with RICHARD BAKER because DR. BAKER purchased Willard Water from CHARLES SUNDE'S company commencing in 2002. (Their contact during that time was exclusively by phone and correspondence through the United States Postal Service, United Parcel Service or Federal Express.)

b.  In 2018, DR. BAKER called CHARLES SUNDE to inform him that he had some business associates, LILLIAN YUEN and ALAN CHIN, who represented that they were able to distribute Willard Water to a vast market in China.

c.  In the fall of 2018, CHARLES SUNDE met DR. BAKER and his two associates, LILLIAN YUEN and ALAN CHIN, at the CAW Industries, Inc. headquarters in Rapid City, South Dakota for the purpose of entering into a distribution agreement for Willard Water in China.

d.  MS. YUEN and MR. CHIN explained they had connections in the beverage industry in China and would be able to distribute significant quantities of Willard Water throughout Asia.

e.  MS. YUEN and MR. CHIN requested the exclusive distribution rights for Willard Water in China through their company, ENVIROGUARD, LLC, a Washington State limited liability company.

f.  In 2018, there were no Willard Water distributors in China. An agreement was reached wherein ENVIROGUARD, LLC could earn the exclusive distribution rights to Willard Water in China as increasing amounts of the product were purchased within a specified period of time.

g.  ENVIROGUARD LLC, and/or MS. YUEN or MR. CHIN, however, purchased a minimal amount of Willard Water in the months following the agreement (not enough to distribute in China, as they had intimated that they would during negotiations).   Thereafter, they purchased no Willard Water, and have not purchased any Willard Water in the past three (3) years, either through ENVIROGUARD LLC, or as individuals.

h.   At no time did Nutrition Coalition, Inc. or CAW Industries, Inc. fail to honor the agreement with ENVIROGUARD, LLC or LILLIAN YUEN or ALAN CHIN to provide Willard Water for sale in China.

30.     As noted above, the LILLIAN YUEN POA was executed in July of 2018, yet she—

*to the benefit of the members of ENVIROGUARD, LLC and MILLENNIUM GREEN, LLC, infra*—

had RICHARD BAKER sign individually without a POA in November 2018 (*indicating and*

*raising an inference of a breach of fiduciary duties*). As is evident from the circumstances noted,

the trip to South Dakota to meet the Willard Water folks was all a sham; nonetheless, being so

induced, RICHARD BAKER gave the natural person Defendants the money when they got back

from the trip.

31.     LILLIAN YUEN, ALAN CHIN, and LINDA LEONG are also the owners of a

marijuana growing company, MILLENNIUM GREEN, LLC, located at 1944 Milwaukee Way,

Tacoma, WA 98421. LILLIAN YUEN is listed as CEO and Founder. (Washington state records

show LILLIAN YUEN, ALAN CHIN, and LINDA LEONG as the sole owners of Millennium

Green.)  ALAN CHIN is listed as COO and Founder.  From its website, www.Millennium.Green,

it is evident that they have a going business, with their product being marketed in 14 retail outlets.

32.     Upon information and belief, MILLENNIUM GREEN, LLC also has a bank

account at Bank of America.  Upon information and belief, it is also alleged that, upon discovery,

the bank records will show the money from ENVIROGUARD, LLC ultimately went to

MILLENNIUM GREEN, LLC, being transferred to the benefit of LILLIAN YUEN, ALAN CHIN,

and LINDA LEONG.

33.     The bank statements are significant, including the second set of deposits into

RICHARD BAKER'S account, as—*upon information and belief*—they demonstrate the

following: ALAN CHIN wrote the checks. Several of the checks bounced and had to be

replaced with other personal checks or cashier's checks.  ALAN CHIN made 24 payments of

$2,000, so the required interest payments were made. However, nothing of the $262,252.25

principal was paid. These facts are significant because they raise the inference that the Defendants were concealing the taking of the principal by paying only the interest, buying the Defendants two years time's worth of concealment, which is significant because of his dementia: Richard Baker's dementia had progressed at the end of these two years to the point where he was completely detached from the significance of any of these facts and dependent entirely upon his POAs. (The Edward Jones check for $262,252.25 was issued to RICHARD BAKER on November 5, 2018.)

34.     ENVIROGUARD, LLC had a Bank of America account (*the same bank as RICHARD BAKER's account*). Upon information and belief, the Edward Jones check went into the ENVRIOGUARD, LLC account and then, within days, or weeks was transferred to the account of the marijuana grow company (Millennium Green), another set of facts raising the inference of fraud and of the intent to defraud.

35.     CONNIE GEREAUX had access to RICHARD BAKER's personal bank account at Bank of America. She wrote checks to pay his bills, which RICHARD BAKER then signed. This fact is significant because it raises the inference that CONNIE GEREAUX concealed the fact that monies had not been paid by her friends and associates, the other natural person Defendants, into the RICHARD BAKER's account.

36.     When Larry McEnroe and DOUGLAS BAKER finally received the Bank of America statements on or about the Summer of 2021, it was noted that CONNIE GEREAUX had been paid approximately $1,000, which represents reimbursement to her for all her expenses in taking care of RICHARD BAKER.

37.     When Larry McEnroe and DOUGLAS BAKER were in Seattle helping to get the house ready for sale in August of 2021, including selecting the realtor, CONNIE GEREAUX appeared to be cooperative. DOUGLAS BAKER met several of the neighbors and it initially

appeared that all the Co-Power-of-Attorneys (Co-POAs) were working for Richard's best interest. That, however, was a deception on the part of CONNIE GEREAUX and was revealed to not be the case when the majority of the POAs selected a realtor that CONNIE GEREAUX did not wish to have. Instead, she advocated for a realtor whose terms were not good and it appeared from the circumstances that there was likely a kickback. CONNIE GEREAUX, nonetheless, insisted on the realtor even though the terms were not favorable.

38.     There was a large safe in the garage of RICHARD BAKER's property. RICHARD BAKER had it for at least 40 years. It was not unusual for him to have expensive jewelry, gold and silver coins and large amounts of cash in the safe. ($200,000 in cash and the $100,000 in jewelry were expected to be in the safe.) RICHARD BAKER could not, however, remember the combination. DOUGLAS BAKER spoke with a safe company, and they opened it for the POAs. Prior to the safe being opened, the realtor that the majority of Co-POAs hired noticed that the safe was gone. The realtor further noted that there were scrapes in the driveway indicating it had been drug across the street.

39.     DOUGLAS BAKER called one of the neighbors he had met and was informed that CONNIE GEREAUX had sold him the safe for $200 (*just the safe, not the contents*). She had stated that she would be back with a locksmith to open the safe later. DOUGLAS BAKER informed the neighbor that CONNIE GEREAUX did not have the authority to sell the safe, and she certainly didn't have the authority to open it. The other POAs came to an agreement and the safe was later opened without issue.

40.     The safe could be opened by a POA hiring a locksmith, so DOUGLAS BAKER had the safe opened. The safe, however, was found to empty of the $200,000 in cash and the $100,000 in jewelry that were expected to be in the safe.

41.     The only other POA, and an individual having motive means and opportunity to so empty the safe was LILLIAN YUEN. This, in light of the circumstances alleged, raises the inference that LILLIAN YUEN emptied the safe and wrongfully appropriated the contents.

42.     When confronted about the safe, CONNIE GEREAUX had a story that did not add up. It was obvious she was discovered to have acted in a faithless manner and she tried to lie her way out of it.  Dealings between CONNIE GEREAUX and the other POAs deteriorated following that. She said she was done talking to them, texting them, etc. Correspondingly, RICHARD BAKER had become increasingly antagonistic towards his other POAs.  These facts and the facts identified in the preceding two paragraphs are significant because they show that CONNIE GEREAUX was a faithless fiduciary.

43.     Larry McEnroe and DOUGLAS BAKER, however, ultimately agreed to be RICHARD BAKER's guardians. Once RICHARD BAKER's house sold, in October 2021, RICHARD BAKER was moved from the memory care facility (Merrill Gardens) in Auburn to Lawrence, KS.

44.     RICHARD BAKER's dementia has progressed, which was a significant factor in the need for him to move to Kansas. RICHARD BAKER has very little memory of the past five years. He does not remember CONNIE GEREAUX, even though he had slept with her just 9 months before his move to Kansas. (CONNIE GEREAUX was involved in RICHARD BAKER'S affairs, having him sign checks, almost immediately upon sleeping with him, and at least as of December of 2018.)

45.     In April of 2022, a petition for guardianship and conservatorship was granted with DOUGLAS BAKER as the guardian and Larry McEnroe as the stand-by guardian.

46.     In early 2022, DOUGLAS BAKER received the final closing documents for the sale of RICHARD BAKER's house. In June of 2020, RICHARD BAKER refinanced his house; noteworthy, however, the person signing for him as POA was none other than Defendant LILLIAN YUEN, the person who in 2018 defrauded him out of $262,252. The refinanced loan amount was $250,000. None of the loan proceeds showed up in RICHARD BAKER's bank account.

47.     Upon information and belief, the original loan amount was paid down to somewhere between $100,000 and $150,000.   RICHARD BAKER previously paid between $40,000 to 45,000 to his ex-wife as a settlement; and had roughly $5,000 in miscellaneous bills.  Upon information and belief, LILLIAN YUEN improperly appropriated the other funds. (Larry McEnroe and DOUGLAS BAKER have asked the mortgage company to provide the details of the refinance, along with copies of the checks that were disbursed.)

48.     As can be noted from the circumstances concerned, *supra*, Defendants LILLIAN YUEN, ALAN CHIN, and LINDA LEONG, CONNIE GEREAUX perpetrated a long confidence scheme, wherein the Defendants immersed themselves in RICHARD BAKER'S life, took him to South Dakota on the Willard Water sham, paid him the monthly interest to conceal the ultimate intent to keep the principal outright and then defaulted on the principal once he was so far gone in his suffering from dementia that he would not remember and/or be able to address the issue. In this, CONNIE GEREAUX was used to manage his accounts and affairs so that the dealings were never addressed, basically concealing them. Furthermore, LILLIAN YUEN, using the POA, had his house refinanced in 2020. There is $16,000 unaccounted for.  It never made it to RICHARD BAKER's bank account. Another abuse of her fiduciary duty.

49.     These inferences are bolstered by the CHARLES SUNDE FACTS and fact that the POA LILLIAN YUEN had been executed in July 2018. As is evident from the circumstances, the

POA raises the inference that RICHARD BAKER was unable to transact his own affairs that summer. An inference, therefore, arises that it was not proper for him to sign for himself on the Operating Agreements, Promissory Notes, Loan Agreements, etc., five months later, yet LILLIAN YUEN had him do so.  Significantly, in June of 2020 LILLIAN YUEN used the same POA to redo RICHARD BAKER's house loan (*another of the continuing efforts to defraud him*).  As noted, there is $16,000 unaccounted for in that transaction.  The pattern of the POA Defendants, *i.e.*, CONNIE GEREAUX and LILLIAN YUEN, abusing their fiduciary obligations is evident in the allegations of ¶¶ 7, 14, 24, 30-33, 35-44, and 46-48, *supra*, as well as in all other relevant parts of the background allegations, *supra*.

## IV. THE STATEMENTS OF CLAIM/CAUSES OF ACTION

### A. FIRST CAUSE OF ACTION: ACTION ON A PROMISSORY NOTE.

50.    Plaintiff realleges the foregoing paragraphs with the same effect as if fully set forth herein.

51.    Defendants LILLIAN YUEN and ALAN CHIN executed a promissory note for $262,252.25 in November 2018 on behalf of ENVIROGUARD, LLC. The note was duly attested and notarized and was personally guaranteed by LILLIAN YUEN and ALAN CHIN. The note is annexed as **EXHIBIT 1**.

52.    The aforementioned note was to be repaid, including the payment of 24 monthly installments at 6.5% interest. 24 monthly payments for interest in the sum of $2,000 each were made, yet no principal payments have ever been made.

53.    Thus, Defendants ALAN CHIN, LILLIAN YUEN and ENVIROGUARD, LLC owe the Plaintiff the unpaid portions of the obligations under the notes, including unpaid principal and interest going back to the time that they took the money concerned, as alleged above.

### B. SECOND CAUSE OF ACTION: ACTION FOR MONEY LOANED.

54.     Plaintiff realleges the foregoing paragraphs with the same effect as if fully set forth herein.

55.     As noted in ¶¶ 50-53, 22 and 27, and 45-49, *supra*, as well as all other relevant parts of the background allegations, Defendants ALAN CHIN, LILLIAN YUEN and ENVIROGUARD, LLC owe Plaintiff for money the Plaintiff loaned these Defendants as set forth in the time periods referenced in **EXHIBIT 1**.

### C. THIRD CAUSE OF ACTION: NEGLIGENT MISREPRESENTATION—FAILURE TO DISCLOSE.

56.     Plaintiff realleges the foregoing paragraphs with the same effect as if fully set forth herein.

57.     Defendants ALAN CHIN, LILLIAN YUEN, LINDA LEONG, CONNIE GEREAUX, ENVIROGUARD, LLC, and MILLENIUM  had a duty to disclose to Plaintiff the following information, including: (**1**) that the Defendants concerned did not intend to pursue a business distributing Willard Water in China, but instead intended to take money from the Plaintiff that they would then appropriate in their own marijuana business; (**2**) that the POAs would be used to take and appropriate the funds associated with Plaintiff's home, as also referenced in ¶¶ 46-48, *supra*, as well as all other relevant parts of the background allegations; (**3**) that the Defendants concerned intended to use the POAs to steal value from the Plaintiff in all the ways referenced above; and (**4**) that the referenced Defendants did not intend to repay the loan(s);

58.     These Defendants did not disclose this information to Plaintiff;

59.     These Defendants neglected a duty owed to the Plaintiff in failing to disclose this information, as it was foreseeable that harm would come to the Plaintiff if said information was not disclosed, as noted *infra*, and as the Defendants concerned either owed a fiduciary duty to the

Plaintiff as noted in ¶¶ 14, 25, 30 and 42-48, *supra*, as well as all other relevant parts of the background allegations, aided and abetted a breach of fiduciary duties, in all the ways noted, *supra*, had developed a confidential relationship with the Plaintiff in all the ways noted in the background allegations, and/or aided and abetted the other Defendants concerned by working in concert with the other Defendants to take advantage of the Plaintiff's confidence in a way that would deprive him of money and enrich the Defendants;

60.    The disclosure of the information concerned would have caused the Plaintiff to act differently; and

6l.    Plaintiff was damaged by the referenced failure to disclose this information.

62.    The failure to disclose concerned was discovered shortly before the filing of this lawsuit.

### D. FOURTH CAUSE OF ACTION: FRAUD BY AFFIRMATIVE MISREPRESENTATION, CIVIL CONSPIRACY TO COMMIT SAME, AND/OR THE AIDING AND ABETTING OF FRAUD BY AFFIRMATIVE MISREPRESENTATION.

63.    Plaintiff realleges the foregoing paragraphs with the same effect as if fully set forth herein.

64.    As noted in ¶¶ 17-30, as well as all other relevant parts of the background allegations, Defendants LILLIAN YUEN, ALAN CHIN and ENVIROGUARD, LLC represented that they were seeking investment from the Plaintiff in the form of a loan that would be used in a legitimate business endeavor to sell Willard Water in China as though is was an existing fact, and that the loan would be paid back in full (*which was never the Defendants' intent*);

65.    The representation was material, as it was meant to induce the Plaintiff to take part in the referenced Defendants' scheme;

66.    The representation(s) referenced in the background allegations and in ¶¶ 57 and 64, *supra*, as well as all other relevant parts of the background allegations, were false;

67.     As per the circumstances referenced in the background allegations, an inference arises that the speakers concerned had knowledge of the falsity;

68.     As per the circumstances referenced in the background allegations, an inference arises that the speaker's intent was that the false statements be acted upon by the Plaintiff;

69.     As per the circumstances referenced in the background allegations, an inference arises that two or more people combined to accomplish an unlawful purpose, or combined to accomplish a lawful purpose by unlawful means; and the conspirators entered into an agreement of some kind and/or concerted action to accomplish the object of the conspiracy;

70.     As per the circumstances referenced in the background allegations, an inference arises that the Defendants LINDA LEONG, CONNIE GEREAUX, MICHAEL LEONG, MILLENNIUM GREEN, LLC provided material aid and assistance to Defendants LILLIAN YUEN, ALAN CHIN and ENVIROGUARD, LLC, taking affirmative steps to aid them in the wrongdoing;

71.     As per the circumstances referenced in the background allegations, an inference arises as to the Plaintiff's ignorance of the falsity;

72.     As per the circumstances referenced in the background allegations, an inference arises as to the Plaintiff's reliance on the truth of the representation;

73.     As per the circumstances referenced in the background allegations, an inference arises as to the Plaintiff's right to rely upon the statements; and

74.     As per the circumstances referenced in the background allegations, an inference arises as to the resulting damage to Plaintiff.

75.     The fraud concerned was discovered shortly before the filing of the Complaint.

### E. FIFTH CAUSE OF ACTION: FRAUD BY NONDISCLOSURE/CONSTRUCTIVE FRAUD, CIVIL CONSPIRACY TO COMMIT SAME AND/OR THE AIDING AND ABETTING OF FRAUD BY NONDISCLOSURE/CONSTRUCTIVE FRAUD.

76.     Plaintiff realleges the foregoing paragraphs with the same effect as if fully set forth herein.

77.     As noted via inferences raised from the facts concerned in ¶¶ 17-30, *supra*, and in the other background allegations, Plaintiff would not have entered the dealings with the Defendants or provided them with access to his monies and assets (*i.e.*, given up something) had he known that the Defendants concerned had no interest in selling Willard Water in China but were merely using that as a sham excuse to take Plaintiff's money and then take advantage of his dementia (*i.e.*, the facts identified in ¶¶ 33, 44, 48-52, *supra*, as well as all other relevant parts of the background allegations).

78.     As noted via inference in the facts concerned in the background allegations, *supra*, Defendants ALAN CHIN, LILLIAN YUEN, LINDA LEONG, CONNIE GEREAUX and ENVIROGUARD, LLC concealed from or failed to disclose certain material facts to the Plaintiff (*i.e.*, the facts identified in ¶ 77, *supra*, and all the other material facts withheld from Plaintiff, as noted in the background allegations);

79.     As noted via inference in the facts concerned in the background allegations, *supra*, said Defendants had a duty to disclose the material facts of what they really intended to the Plaintiff (*e.g.*, the Defendants concerned either created a false impression of material fact, fostered and took advantage of a confidential relationship to gain Plaintiff's trust, were fiduciaries, and/or worked in concert or aided and abetted other Defendants in doing so), as such facts should have been disclosed in good faith and in good conscience;

80.     As per the circumstances referenced in the background allegations, an inference arises that two or more people combined to accomplish an unlawful purpose, or combined to

accomplish a lawful purpose by unlawful means; and the conspirators entered into an agreement of some kind and/or concerted action to accomplish the object of the conspiracy;

81.     As per the circumstances referenced in the background allegations, an inference arises that Defendants LINDA LEONG, CONNIE GEREAUX, MICHAEL LEONG, MILLENNIUM GREEN, LLC provided material aid and assistance to Defendants ALAN CHIN, LILLIAN YUEN, LINDA LEONG, CONNIE GEREAUX and ENVIROGUARD, LLC, taking affirmative steps to aid them in the wrongdoing;

82.     As noted via inference in the facts concerned in the background allegations *supra*, the undisclosed facts were material and important, as the inference arises that the Plaintiff would not had taken part in the dealings concerned had he known the truth;

83.     As noted via inference in the facts concerned in the background allegations, *supra*, nondisclosure is equivalent to an affirmative false representation given that the non-disclosed facts known by the Defendants concerned, but not known to the Plaintiff, were so vital that if the mistake had been mutual, then the dealings agreements and dealings concerned would have been voidable;

84.     The allegations of the preceding paragraph are amplified in significance by the fact that the Plaintiff had dementia at all times concerned, making the dealings void if not voidable;

85.     As noted via inference in the facts concerned in the background allegations, *supra*, the Defendants concerned knew: (**1**) Plaintiff was ignorant of the facts, and (**2**) Plaintiff did not have an equal opportunity to discover the facts;

86.     As noted via inference in the facts concerned in the background allegations, *supra*, the Defendants concerned were deliberately silent when they had a duty to speak;

87.     As noted via inference in the facts concerned in the background allegations, *supra*, a fiduciary relationship between certain Defendants and the Plaintiff;

88.     As noted via inference in the facts concerned in the background allegations, *supra*, the Defendant concerned intended to induce the Plaintiff to take some action or refrain from acting through their failure to disclose the facts concerned;

89.     As noted via inference in the facts concerned in the background allegations, *supra*, Plaintiff relied on the Defendants' nondisclosure; and

90.     As noted via inference in the facts concerned in the background allegations, *supra*, Plaintiff was injured as a result of acting without the knowledge of the undisclosed facts.

91.     The fraud referenced in this statement of a claim was discovered shortly before the filing of this Complaint.

### F. SIXTH CAUSE OF ACTION: BREACH OF FIDUCIARY DUTY, CIVIL CONSPIRACY TO COMMIT SAME AND/OR THE AIDING AND ABETTING OF THE BREACH OF FIDUCIARY DUTIES.

92.     Plaintiff realleges the foregoing paragraphs with the same effect as if fully set forth herein.

93.     As noted via inference in the facts concerned in ¶¶ 7, 14, 24, 30-33, 35-44, and 46-48, *supra*, as well as all other relevant parts of the background allegations, LILLIAN YUEN and CONNIE GEREAUX were Plaintiff's attorneys in fact at the time of the acts in question;

94.     As noted via inference in the facts concerned in ¶¶ 7, 14, 24, 30-33, 35-44, and 46-48, *supra*, as well as all other relevant parts of the background allegations, *supra*, LILLIAN YUEN and CONNIE GEREAUX owed a fiduciary duty to Plaintiff at the time of the acts in question;

95.     As noted via inference in the facts concerned in ¶¶ 7, 14, 24, 30-33, 35-44, and 46-48, *supra*, as well as all other relevant parts of the background allegations, *supra*, LILLIAN YUEN and CONNIE GEREAUX failed to comply with the fiduciary duty by taking advantage of Plaintiff;

96.     As per the circumstances referenced in the background allegations, an inference arises that two or more people combined to accomplish an unlawful purpose, or combined to accomplish a lawful purpose by unlawful means; and the conspirators entered into an agreement of some kind and/or concerted action to accomplish the object of the conspiracy;

97.     As per the circumstances referenced in the background allegations, an inference arises that Defendants ALAN CHIN, LINDA LEONG, MICHAEL LEONG, MILLENNIUM GREEN, LLC and ENVIROGUARD, LLC provided material aid and assistance to Defendants LILLIAN YUEN and CONNIE GEREAUX, taking affirmative steps to aid them in the wrongdoing;

98.     As noted via inference in the facts concerned in the background allegations, *supra*, Plaintiff was injured and/or damaged by the breach of fiduciary duties concerned; and

99.     As noted via inference in the facts concerned in the background allegations, *supra*, the violation of the fiduciary duty was a proximate cause of Plaintiff's injury and/or damage.

100.     The breach of fiduciary duties was discovered shortly before the filing of the Complaint.

### G. Seventh Cause of Action: Conversion, Civil Conspiracy to Commit Same, and/or the Aiding and Abetting of Conversion.

101.     Plaintiff realleges the foregoing paragraphs with the same effect as if fully set forth herein.

102.     As noted via inference in the facts concerned in the background allegations, *supra*, there was willful interference with chattels belonging to the Plaintiff;

103.     As per the circumstances referenced in the background allegations, an inference arises that two or more people combined to accomplish an unlawful purpose, or combined to accomplish a lawful purpose by unlawful means; and the conspirators entered into an agreement of some kind and/or concerted action to accomplish the object of the conspiracy;

104.    As per the circumstances referenced in the background allegations, an inference arises that Defendants ALAN CHIN, LINDA LEONG, MICHAEL LEONG, MILLENNIUM GREEN, LLC and ENVIROGUARD, LLC, LILLIAN YUEN and CONNIE GEREAUX provided material aid and assistance to on another, taking affirmative steps to aid each other in the wrongdoing alleged;

105.    As noted via inference in the facts concerned in the background allegations, *supra*, the interference was by either taking or unlawful retention; and

106.    As noted via inference in the facts concerned in the background allegations, *supra*, the interference thereby deprived the owner of possession.

107.    The conversion concerned was discovered shortly before the filing of the Complaint.

## V.PRAYER FOR RELIEF

108.    **WHEREFORE**, the relief sought is for money damages, as noted in the claims and causes of action noted above, for interest thereon, from the date of the amounts of money transferred in **EXHIBIT 1**, as well as for all damages and equitable remedies affordable to the Plaintiff against all of the Defendants on the facts alleged along with any and all other relief that is just and proper under the circumstances, including injunctions, to wit:

    a.    For a judgment against Defendants for the causes of action alleged against them;

    b.    For compensatory damages in an amount to be proven at trial;

    c.    For a declaration that Defendants' conduct as alleged herein is unlawful and in material breach of the promissory note(s);

    d.    For appropriate injunctive relief, enjoining Defendants from continuing to engage in conduct related to the breach of the promissory note(s);

    e.    For return of the property and monies taken via conversion;

f.   For pre-judgment and post-judgment interest at the maximum rate permitted by law;

g.   For any applicable punitive damages, particularly for the fraud-based causes of action and the breach of fiduciary duties;

h.   For any applicable attorney's fees;

i.   For Plaintiffs' costs incurred; and

j.   For such other relief in law or equity as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

109.   Plaintiff hereby reiterates his demand a trial by jury on all issues so triable.

Dated:  March 6, 2023

Respectfully submitted,

DOUGHERTY & HOLLOWAY, LLC

By: _____
Ed Dougherty, KS #23964
9 Westowne Drive, Suite B
Liberty, Missouri 64068
(816) 891-9990
(816) 891-9905 - Facsimile
edougherty@dh-law.com

ATTORNEYS FOR PLAINTIFFS