## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

DOUGLAS BAKER as administrator of the
estate of RICHARD BAKER,

                            Plaintiff,                    Case No. 23-2103-DDC-TJJ

v.

ALAN CHIN, et al.,

                            Defendants.

## MEMORANDUM AND ORDER

Plaintiff Douglas Baker brings this suit as administrator of the estate of Richard Baker—Douglas's late cousin.[1]  In simple terms, plaintiff alleges that defendants Alan Chin, Lillian Yuen, Connie Gereaux, Enviroguard, LLC, and Millennium Green, LLC conspired to defraud Richard Baker of more than $270,000, using their personal and fiduciary relationships with Richard and exploiting his mental decline into dementia.  Plaintiff now seeks to recover that sum.

Ms. Yuen, Mr. Chin, Enviroguard, and Millennium Green (collectively referred to as the "Chin Defendants") filed a Motion to Dismiss under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction and under Fed. R. Civ. P. 12(b)(3) for improper venue.  Doc. 54.  Ms. Gereaux also filed a Motion to Dismiss under Rule 12(b)(2) and 12(b)(3).  Doc. 68.  Plaintiff objects to defendants' personal jurisdiction and venue arguments.  Doc. 58; Doc. 71.  The court grants defendants' Motions to Dismiss for reasons explained below.

---

[1]         The court refers to Richard Baker by his first name throughout this Memorandum and Order to avoid confusion with Douglas Baker, who shares the same last name.  Any time the court uses "plaintiff," it refers to Douglas Baker.

## I.        Background

The following facts come from plaintiff's Amended Complaint (Doc. 43).  The court accepts plaintiff's "well-pleaded facts as true, view[s] them in the light most favorable to the Plaintiff, and draw[s] all reasonable inferences from the facts in" plaintiff's favor.  *Audubon of Kan., Inc. v. U.S. Dep't of Interior*, 67 F.4th 1093, 1108 (10th Cir. 2023) (citation, internal quotation marks, and brackets omitted).  The Amended Complaint fails to present the facts chronologically or use a simple narrative structure.  The court nevertheless does its best to restate plaintiff's facts cohesively, starting with Richard's relationship with the Chin Defendants, then turning to his relationship with Ms. Gereaux.

### *Richard Baker's Relationship with the Chin Defendants*

In 2018, Richard Baker lived in Washington state as a retired chiropractor.  Doc. 43 at 4–5, 14 (Am. Compl. ¶¶ 15, 17, 35).  He was a proponent of a product called Willard's Water and recommended it to patients.  *Id.* at 5 (Am. Compl. ¶ 17).  Though he was retired and suffered from dementia, Richard continued to treat patients.  *Id.* at 4 (Am. Compl. ¶ 15).  Defendant Lillian Yuen was one of Richard's patients.  *Id.* (Am. Compl. ¶ 16).  Ms. Yuen and her husband, defendant Alan Chin, own a company called Enviroguard, LLC.  *Id.* at 1–2 (Am. Compl. ¶¶ 3–4).  Mr. Chin also owned a company called Millennium Green, LLC.  *Id.* at 3 (Am. Compl. ¶ 10).  Ms. Yuen and Mr. Chin live in Washington and their companies are Washington limited liability companies.  *Id.* at 1, 3 (Am. Compl. ¶¶ 3–4, 9–10).  They presented themselves to Richard as "real movers and shakers with major contacts in China."  *Id.* at 4 (Am. Compl. ¶ 16).  Richard communicated with Ms. Yuen and Mr. Chin about Willard's Water and the couple told Richard that they could market Willard's Water in China due to their contacts there.  *Id.* at 5 (Am. Compl. ¶¶ 17–18).

2

In November 2018, Richard endorsed a check for $262,252.25 to Ms. Yuen and Mr. Chin, which they deposited in Enviroguard's bank account. *Id.* at 5 (Am. Compl. ¶ 19). Richard wrote the check to establish a distribution network for Willard's Water in China. *Id.* (Am. Compl. ¶ 20). He was "promised equity in Enviroguard" and "that he would make millions through Enviroguard[.]" *Id.* (capitalization omitted). Ms. Yuen and Mr. Chin executed a promissory note for $262,252.25 on behalf of Enviroguard, promising to repay Richard the note and make 24 monthly payments of $2,000 in interest. *Id.* at 19 (Am. Compl. ¶¶ 51–52). Ms. Yuen and Mr. Chin paid each interest installment, but never made a principal payment. *Id.*

Shortly after Ms. Yuen and Mr. Chin deposited the check in the Enviroguard account, checks were written from the Enviroguard account to Ms. Yuen and/or Mr. Chin, essentially emptying the account of the money deposited. *Id.* at 6 (Am. Compl. ¶ 21). Within a month or two, Ms. Yuen and Mr. Chin told Richard that they could not make a deal with Willard's Water. *Id.* at 7 (Am. Compl. ¶ 28). But this wasn't true. *Id.* Willard's Water had offered Ms. Yuen and Mr. Chin the opportunity to enter a distribution agreement if they would agree to the terms. *Id.* Richard's deposit to Enviroguard ultimately went to Mr. Chin's company, Millennium Green. *Id.* at 10 (Am. Compl. ¶ 32).

Richard's relationship with Ms. Yuen exceeded their business relationship. In June 2018, Ms. Yuen became Richard's power of attorney. *Id.* at 5 n.1, 7 (Am. Compl. ¶¶ 19, 25). In June 2020, Richard refinanced his house and Ms. Yuen signed as his power of attorney. *Id.* at 17 (Am. Compl. ¶ 46). But Richard's bank account never reflected the proceeds of the refinanced home. *Id.* Ms. Yuen, using the power of attorney, improperly appropriated $16,000 of Richard's home refinancing funds. *Id.* at 17–18 (Am. Compl. ¶¶ 47–49). Ms. Yuen, as Richard's power of

attorney, also had the means and opportunity to steal $200,000 in cash and $100,000 in jewelry from Richard's safe.  *Id.* at 15–16 (Am. Compl. ¶¶ 38, 41).

### *Richard's Relationship with Connie Gereaux*

In November 2020, Ms. Yuen, Mr. Chin, and Linda Leong—Ms. Yuen's sister—introduced Richard to defendant Connie Gereaux, Ms. Leong's friend.  *Id.* at 2 (Am. Compl. ¶ 7).  Ms. Leong told Richard that they knew of a beautiful woman that could live with him and help him with his affairs.  *Id.* at 6–7 (Am. Compl. ¶ 24).  Richard and Ms. Gereaux quickly developed an intimate relationship.  *Id.*  And in July 2021, Richard executed a power of attorney, making Ms. Gereaux, along with his two cousins—plaintiff Douglas Baker and Larry McEnroe—co-power of attorneys.  *Id.* at 11 (Am. Compl. ¶ 35).  Ms. Gereaux had access to Richard's personal bank account and wrote checks to pay his bills.  *Id.*  She had numerous telephone calls with plaintiff and Mr. McEnroe, discussing Richard's doctor appointments and finding a place for him to live, as it was obvious that Richard could not live on his own.  *Id.*  During these calls, plaintiff was in Kansas.  *Id.*

Ms. Gereaux impeded her co-power of attorneys' efforts to govern Richard's affairs, beginning with his bank records.  Richard's bank required all three power of attorneys' presence to gain access to Richard's bank records.  *Id.* at 12.  Yet, Ms. Gereaux refused to go to the bank with Mr. McEnroe and plaintiff when they visited Washington.  *Id.*  When Mr. McEnroe and plaintiff returned to Kansas, they attempted to access Richard's bank records again.  *Id.*  In Kansas, they had telephone conversations with Ms. Gereaux about accessing the bank records, but she constantly thwarted their efforts.  *Id.*  She generally was not forthcoming during the communication and failed to provide material information.  *Id.*

Ms. Gereaux also tried to steal Richard's safe.  Plaintiff learned that Richard's safe was missing from his Washington residence, and that there were scrapes in the driveway indicating

someone had dragged it across the street.  *Id.* at 15–16 (Am. Compl. ¶ 38).  One of Richard's

neighbors told plaintiff that Ms. Gereaux sold the neighbor the empty safe.  *Id.* at 16 (Am.

Compl. ¶ 39).

Finally, Ms. Gereaux complicated the efforts to sell Richard's house.  In August 2021,

Mr. McEnroe and plaintiff visited Washington to prepare Richard's house for sale.  *Id.* at 15

(Am. Compl. ¶ 37).  Ms. Gereaux insisted that they use her friend as the realtor to sell Richard's

house.  *Id.* at 13 (Am. Compl. ¶ 35).  But the realtor's "terms were not good and it appeared from

the circumstances that there was likely a kickback."  *Id.* at 15 (Am. Compl. ¶ 37).  Richard's

house sold in October 2021 and Richard moved to a memory care facility in Lawrence, Kansas.

*Id.* at 1, 16–17 (Am. Compl. ¶¶ 1, 43).  Ms. Gereaux acknowledged that plaintiff and Mr.

McEnroe were Richard's only family members caring for him, and that plaintiff was from

Kansas.  *Id.* at 14–15 (Am. Compl. ¶ 35).  By this time Richard's dementia had progressed,

which was a significant factor for moving him to Kansas.  *Id.* at 17 (Am. Compl. ¶ 44).  Richard

had very little memory of the past five years—including Ms. Gereaux.  *Id.*  In August 2023, Ms.

Gereaux sent plaintiff an email while he was in Kansas, responding to earlier emails plaintiff had

sent about the realtor, the sale of Richard's house, and a senior relocation service.  *Id.* at 14 (Am.

Compl. ¶ 35).

In October 2023, Ms. Gereaux resigned as Richard's power of attorney.  *Id.*  But before

she resigned, Ms. Gereaux told plaintiff how she met Richard, her friendship with Ms. Leong,

and her knowledge that Mr. Chin and Ms. Yuen had taken Richard's money.  *Id.* at 13 (Am.

Compl. ¶ 35).  That same month, Ms. Gereaux and plaintiff had a telephone conversation—while

plaintiff was in Kansas—about Richard's safe, his bank records, and the sale of Richard's house.

*Id.* at 14 (Am. Compl. ¶ 35).

## II.      Procedural History

On March 6, 2023, plaintiff sued defendants asserting seven claims.  Counts I and II name Ms. Yuen, Mr. Chin, and Enviroguard for action on a promissory note (Count I) and action for money loaned (Count II).  The other five claims name all defendants, suing them for: negligent misrepresentation (Count III); fraud by affirmative misrepresentation, civil conspiracy to commit the same, and aiding and abetting of the same (Count IV); fraud by nondisclosure, civil conspiracy to commit the same, and aiding and abetting of the same (Count V); breach of fiduciary duty, civil conspiracy to commit the same, and aiding and abetting of the same (Count VI); and conversion, civil conspiracy to commit the same, and aiding and abetting of the same (Count VII).[2]

On September 29, 2023, the Chin Defendants filed a Motion to Dismiss.  Invoking Fed. R. Civ. P. 12(b)(2), they assert the court lacks personal jurisdiction.  Also, they invoke Fed. R. Civ. P. 12(b)(3), asserting improper venue.  Doc. 54.  On December 6, 2023, Ms. Gereaux also filed a Motion to Dismiss under Rule 12(b)(2) and 12(b)(3).  Doc. 68.  Plaintiff opposes both motions.  Doc. 58; Doc. 71.  The court now evaluates the parties' arguments, starting with the legal standard, below.

## III.      Legal Standard

Ms. Gereaux and the Chin Defendants contend this court lacks personal jurisdiction over them.  Rule 12(b)(2) of the Federal Rules of Civil Procedure governs such a defense, and a plaintiff bears the burden to establish personal jurisdiction over each defendant named in the action.  *Rockwood Select Asset Fund XI (6)-1, LLC v. Devine, Millimet & Branch*, 750 F.3d 1178, 1179–80 (10th Cir. 2014) (citation omitted).  But in the preliminary stages of litigation, a

---

[2]      Douglas also sued defendants Michael Leong and Linda Leong on Counts IV–VII, but later voluntarily dismissed them from the case.  Doc. 62; Doc. 63.

plaintiff's burden to prove personal jurisdiction is light.  *AST Sports Sci., Inc. v. CLF Distrib. Ltd.*, 514 F.3d 1054, 1056 (10th Cir. 2008) (citation omitted).

Where, as here, defendants ask the court to dismiss for lack of personal jurisdiction on a pretrial motion and without an evidentiary hearing, plaintiff must make no more than a prima facie showing of jurisdiction.  *Id.* at 1056–57 (citing O*MI Holdings, Inc. v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1091 (10th Cir. 1998)).  "The plaintiff may make this prima facie showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant."  *OMI Holdings, Inc.*, 149 F.3d at 1091.  The court may consider affidavits to determine if plaintiff has made a prima facie showing and do so without converting defendants' motions into motions for summary judgement.  *Goff v. Hackett Stone Co.*, 185 F.3d 874 (10th Cir. 1999) (holding that converting a motion to dismiss into a motion for summary judgment "is appropriate . . . under Rule 12(b)(6), . . . but it is not appropriate for motions to dismiss for lack of personal jurisdiction or improper venue under Rules 12(b)(2) and (3)); *see also Topliff v. Atlas Air, Inc.*, 60 F. Supp. 2d 1175, 1176 (D. Kan. 1999) ("[N]othing in the Federal Rules of Civil Procedure . . . makes Rule 56 applicable to motions filed under Rule 12(b)(2) . . . when matters outside of the pleadings are presented.").

To counter a plaintiff's prima facie showing of personal jurisdiction, defendants "must present a compelling case demonstrating 'that the presence of some other considerations would render jurisdiction unreasonable.'"  *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).  When the defendant fails to controvert plaintiff's allegations with affidavits or other evidence, the court must accept the well-pleaded allegations in the complaint as true and resolve any factual disputes in plaintiff's favor.  *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995).

7

In a state such as Kansas—one where the state's long arm statute permits personal jurisdiction to the full extent permitted by the Constitution—due process principles govern the personal jurisdiction analysis. *OMI Holdings, Inc.*, 149 F.3d at 1090 (citing *Federated Rural Elec. Ins. Corp. v. Kootenai Elec. Co-op.*, 17 F.3d 1302, 1305 (10th Cir. 1994)). The Due Process clause of the Fourteenth Amendment limits a court's power to exercise personal jurisdiction over an out-of-state defendant in accordance with the nature and extent of "the defendant's relationship to the forum State." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021) (citation and internal quotation marks omitted). That relationship may permit the court's exercise of either general or specific jurisdiction. *See Daimler AG v. Bauman*, 571 U.S. 117, 126–27 (2014). General jurisdiction applies when a defendant is "essentially at home" in a state. *Id.* at 127.

The parties' arguments here rely solely on specific jurisdiction, however, so the court confines its analysis to that theory of personal jurisdiction.

## A.     Specific Jurisdiction:  Minimum Contacts

The "constitutional touchstone" of the specific jurisdiction inquiry is "whether the defendant purposefully established 'minimum contacts' in the forum State." *Burger King*, 471 U.S. at 474 (citation omitted). Foreseeability is critical to this analysis. *Id.* To meet the foreseeability requirements, "defendant's conduct and connection with the forum State [must be] such that he should reasonably anticipate being haled into court" there. *Id.* (citation and internal quotation marks omitted). "Those contacts must be the defendant's own choice and not random, isolated, or fortuitous." *Ford Motor Co.*, 592 U.S. at 359 (citation and internal quotation marks omitted).

Our Circuit has explained that communications with a "targeted" audience qualify as minimum contacts and will suffice to warrant personal jurisdiction. *Shrader v. Biddinger*, 633

F.3d 1235, 1247 (10th Cir. 2011).  Targeted communications include "phone calls, faxes, and letters made or sent by out-of-state defendants to forum residents."  *Id.*  Courts have found these kinds of contacts "sufficient to support specific personal jurisdiction when they directly give rise to the cause of action[.]"  *Id.* (collecting cases).  The Supreme Court has held that "the plaintiff cannot be the only link between the defendant and the forum," but a case where the defendant had "never traveled to, conducted activities within, contacted anyone in, or sent anything or anyone to" the forum state produced this holding.  *Walden v. Fiore*, 571 U.S. 277, 285, 288–89 (2014).  In short, *Walden*'s plaintiff was considered the only link between defendant and the forum when "no part of [defendant's] course of conduct occurred in" the forum state.  *Id.* at 288.

Minimum contacts may "appear in different guises" depending on whether a lawsuit asserts tort claims or contract claims.  *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1071 (10th Cir. 2008).  Regardless of context, both "guises" of the minimum contacts' analysis have "the shared aim of [the] 'purposeful direction' doctrine[.]"  *Id.*  The Tenth Circuit has held that minimum contacts exist in the tort context when "(a) an intentional action . . . was (b) expressly aimed at the forum state . . . with (c) knowledge that the brunt of the injury would be felt in the forum state[.]"  *Id.* at 1072.  The Tenth Circuit also has found minimum contacts in the contracts context when parties "'reach out beyond one state and create continuing relationships and obligations with citizens of another state[.]'"  *Benton v. Cameco Corp.*, 375 F.3d 1070, 1077 (10th Cir. 2004) (quoting *Burger King*, 471 U.S. at 473).  When conducting the minimum contacts analysis in either the tort or the contract context, the court must distinguish between "well-pleaded facts" and "conclusory allegations."  *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007).

**B.      Specific Jurisdiction:  A Prima Facie Showing**

Our Circuit's analysis evaluates personal jurisdiction in the early stages of litigation

based on the complaint and any affidavits.  "[P]laintiffs need only make a prima facie showing of

personal jurisdiction." *Hood v. Am. Auto Care, LLC*, 21 F.4th 1216, 1220 (10th Cir. 2021).  The

Circuit resolves any factual disputes in plaintiff's favor "notwithstanding [a] contrary

presentation by the moving party." *Behagen v. Amateur Basketball Ass'n of U.S.A.*, 744 F.2d

731, 733 (10th Cir. 1984).  To "defeat a plaintiff's prima facie showing of jurisdiction, a

defendant must present a compelling case demonstrating 'that the presence of some other

considerations would render jurisdiction unreasonable.'" *OMI Holdings, Inc.*, 149 F.3d at 1091

(quoting *Burger King*, 471 U.S. at 477).

**C.      Specific Jurisdiction:  Fair Play and Substantial Justice**

Finally, if minimum contacts exist, then our Circuit also requires district courts to

evaluate "whether 'exercising personal jurisdiction defendants' would otherwise 'be consonant

with traditional notions of fair play and substantial justice,' in order to fully satisfy due process

requirements." *Eighteen Seventy, LP v. Jayson*, 32 F.4th 956, 966 (10th Cir. 2022) (quoting

*Dudnikov*, 514 F.3d at 1071).  To evaluate these notions of fair play and substantial justice, the

court must consider

> (1) the burden on the defendant, (2) the forum state's interest in resolving
> the dispute, (3) the plaintiff's interest in receiving convenient and effective
> relief, (4) the interstate judicial system's interest in obtaining the most
> efficient resolution of controversies, and (5) the shared interest of the
> several states in furthering fundamental substantive social policies.

*OMI Holdings, Inc.*, 149 F.3d at 1095 (citing *Asahi Metal Indus. Co., Ltd. v. Superior Ct. of Cal.,*

*Solano Cnty.*, 480 U.S. 102, 113 (1987)).  The fair play and substantial justice inquiry requires

defendants to present a "'compelling'" case that jurisdiction is unreasonable.  *Compania de*

*Inversiones Mercantiles, S.A. v. Grupo Cementos de Chihuahua S.A.B. de C.V.*, 970 F.3d 1269,

1289 (10th Cir. 2020) (quoting *Burger King*, 471 U.S. at 477).  It is a "rare" case when a defendant satisfies the minimum contacts test but, nonetheless, asserting jurisdiction would offend notions of fair play and substantial justice.  *Newsome v. Gallacher*, 722 F.3d 1257, 1271 (10th Cir. 2013).

Below, in part IV, the court evaluates the personal jurisdiction arguments made by each defendant.  This evaluation starts with Ms. Gereaux (Section A).  Next, Section B turns to the arguments of the Chin Defendants, *i.e.*, Ms. Yuen, Mr. Chin, Enviroguard, LLC, and Millenium Green, LLC.  The court finds that plaintiff has failed to demonstrate that the court has personal jurisdiction over any of the defendants.

## IV.      Motions to Dismiss for Lack of Personal Jurisdiction by Ms. Gereaux and the Chin Defendants

Defendants assert that the court lacks subject matter jurisdiction over them because the Amended Complaint fails to plead any nexus between defendants and Kansas.  Doc. 55 at 5; Doc. 69 at 10.  Plaintiff responds that Ms. Gereaux's email and telephone conversations with him while he was in Kansas provide sufficient minimum contacts to establish specific jurisdiction over her.  Doc. 58 at 10, 13; Doc. 71 at 12–13.  Plaintiff then reasons that Ms. Gereaux's contacts with Kansas extend to the Chin Defendants because Ms. Gereaux and the Chin Defendants conspired to defraud Richard—among other tortious acts.  Doc. 58 at 10; Doc. 71 at 12.  Plaintiff's personal jurisdiction argument rests on what he calls a theory of conspiracy jurisdiction—the idea that "all co-conspirators must be considered agents or instruments of the others, and thus the act of one co-conspirator is considered under the law to be the act of all those involved."  *See* Doc. 58 at 6 (emphases omitted) (quoting *Pro. Invs. Life Ins. Co., Inc. v. Roussel*, 445 F. Supp. 687, 695 (D. Kan. 1978)); *see also Newsome*, 722 F.3d at 1265 ("[A] conspiracy and overt acts of a co-conspirator within the forum may, in some cases, subject another co-

11

conspirator to the forum's jurisdiction." (internal quotation marks, citation, and brackets omitted)).  According to plaintiff's theory, personal jurisdiction over the Chin Defendants depends on whether the court has personal jurisdiction over Ms. Gereaux.  So, the court begins with Ms. Gereaux.

### A.      Specific Jurisdiction Over Ms. Gereaux

The court's personal jurisdiction analysis begins by asking whether it has specific jurisdiction over Ms. Gereaux.  Her argument about specific jurisdiction boils down to this question:  whether Ms. Gereaux's telephone and email communications with plaintiff while he was in Kansas establish sufficient minimum contacts between her and Kansas.  Doc. 69 at 5.

### 1.      Minimum Contacts

Do Ms. Gereaux's communications with plaintiff while he was in Kansas suffice to establish the requisite minimum contacts to exercise specific personal jurisdiction?  All the claims brought against Ms. Gereaux—negligent misrepresentation (Count III); fraud by affirmative misrepresentation (Count IV); fraud by nondisclosure (Count V); breach of fiduciary duty (Count VI); and conversion (Count VII)—sound in tort.  Doc. 43 at 19–27 (Am. Compl. ¶¶ 56–107).  So, the parties debate whether Ms. Gereaux's actions meet the minimum contacts test applied in the torts context.  *See Dudnikov*, 514 F.3d at 1072.

Plaintiff has pleaded enough facts at this stage to show that Ms. Gereaux's actions— telephone calls and emails with plaintiff—were intentional acts.  Ms. Gereaux doesn't dispute this prong of the minimum contacts test.  *See generally* Doc. 69.  The court thus focuses on the second element (whether Ms. Gereaux "expressly aimed" her activity at Kansas) and the third element of the test (whether Ms. Gereaux knew that the brunt of the injury would be felt in Kansas).

On the second element, Ms. Gereaux contends that plaintiff's pleaded facts can't support a finding that she expressly aimed her activity at Kansas.  Doc. 69 at 10–12.  Plaintiff counters, alleging that Ms. Gereaux expressly aimed her actions at Kansas during the following interactions:

- In July 2021, plaintiff and Mr. McEnroe had numerous telephone calls with Ms. Gereaux, discussing Richard's doctor appointments and finding a place for him to live.  During these calls, plaintiff was located in Kansas.  Doc. 43 at 11 (Am. Compl. ¶ 35).

- From August to October 2021, plaintiff and Mr. McEnroe had telephone conversations with Ms. Gereaux about accessing Richard's bank records.  During these calls, plaintiff was located in Kansas.  *Id.* at 12.

- In August 2023, Ms. Gereaux sent an email to plaintiff, responding to his previous emails about the realtor and the sale of Richard's house.  Plaintiff received the email while he was located in Kansas.  *Id.* at 14.

- In October 2023, Ms. Gereaux and plaintiff had a telephone conversation—while plaintiff was located in Kansas—about Richard's safe, his bank records, and the sale of Richard's house.  *Id.*

Ms. Gereaux disagrees that these allegations establish purposeful direction.  Doc. 69 at 11–12.

She argues "the purported 'contact' with Douglas Baker is merely the 'product of the plaintiff's unilateral action' and 'insufficient to constitute minimum contacts.'"  *Id.* at 11–12 (quoting *Ufheil v. Bain*, No. 09-4047, 2009 WL 2252148, at *6 (D. Kan. July 28, 2009)).  Ms. Gereaux also lists a myriad of reasons why she did not have minimum contacts with Kansas: Ms. Gereaux has never resided in Kansas, never visited Kansas, never owned property in Kansas, and never done business in Kansas.  Doc. 69-1 at 1–2 (Gereaux Aff. ¶¶ 4–6).  And Ms. Gereaux had no contact with Richard Baker after he moved to Kansas.  *Id.* at 2 (Gereaux Aff. ¶ 8).

The court agrees with Ms. Gereaux.  Plaintiff has failed to plead facts capable of supporting a finding that the alleged telephone and email communications establish purposeful direction.  While "phone calls, faxes, and letters made or sent by out-of-state defendants to forum

residents . . . have been found sufficient to support specific personal jurisdiction," *Shrader*, 633 F.3d at 1247, it's also "well-established that phone calls and letters are not necessarily sufficient in themselves to establish minimum contacts." *Far W. Cap., Inc. v. Towne*, 46 F.3d 1071, 1077 (10th Cir. 1995); *Melea, Ltd. v. Jawer SA*, 511 F.3d 1060, 1068 n.7 (10th Cir. 2007) ("[A] defendant's correspondence with someone within the forum is typically insufficient to establish the requisite 'minimum contacts.'").  Instead, plaintiff also must allege Ms. Gereaux's relationship with Kansas arises from contacts that Ms. Gereaux *herself* created with Kansas. *Walden*, 571 U.S. at 284 ("[T]he relationship must arise out of contacts that the defendant [herself] creates with the forum state." (citation and internal quotation marks omitted)).  It's not enough that plaintiff was in Kansas when he spoke by phone with Ms. Gereaux, or read an email from her because these actions focus on plaintiff.  And, as the Supreme Court explained in *Walden*, minimum contacts requires a defendant-focused inquiry.  *Id.* at 285 ("[O]ur 'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there.").

When the court evaluates plaintiff's allegation about Ms. Gereaux's contacts with Kansas, they show too little:  Ms. Gereaux hasn't visited Kansas; she hasn't owned property there; and she had no contact with Richard after he moved to Kansas.  Doc. 69-1 at 1–2 (Gereaux Aff. ¶¶ 4–6, 8).  Plaintiff bases his personal jurisdiction argument entirely on *his* location during the telephone call and while reading email communications.  But that focus falls short of the minimum contacts that the Supreme Court requires for personal jurisdiction.  Indeed, "the plaintiff cannot be the only link between the defendant and the forum."  *Walden*, 571 U.S. at 285. In sum, Ms. Gereaux couldn't "'reasonably anticipate being haled into court'" in Kansas simply because plaintiff was located in Kansas when he spoke with her on the phone and read her

emails. *XMission, L.C. v. Fluent LLC*, 955 F.3d 833, 839 (10th Cir. 2020) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

This case differs from ones where the court concluded that telephone calls and emails created minimum contacts sufficient to establish personal jurisdiction.  For example, in *Clear Spring Property & Casualty Co. v. Arch Nemesis, LLC*, this court recently held that it had personal jurisdiction over a corporate defendant when the corporation's agent communicated with a customer located in Kansas.  No. 22-2435, 2023 WL 6123741, at *6 (D. Kan. Sept. 19, 2023).  Specifically, the corporate agent there had called, texted, emailed, and sent WhatsApp messages to a customer—a customer the agent knew to reside in Kansas—to broker a sale of a yacht.  *Id.*  The court concluded that the agent's calls and messages provided sufficient minimum contacts for it to exercise jurisdiction over the corporate defendant because the agent had "'(1) direct[ed] electronic activity into the State, (2) with manifested intent of engaging in business or other interactions within the State, and (3) that activity create[d], in a person within the State, a potential cause of action[.]'"  *Id.* (quoting *Shrader*, 633 F.3d at 1240–41).

Both *Clear Spring*'s corporate defendant and Ms. Gereaux directed electronic activity into Kansas—but that's where the similarities end.  Both *Clear Spring* and *Shrader*[3]—the Tenth Circuit precedent on which *Clear Spring* relies—focus on commercial communications.  Here, there's no business or commercial characteristic to Ms. Gereaux's calls to plaintiff and her email to him.  Plaintiff never alleges that Ms. Gereaux called or emailed him "with [the] manifested intent of engaging in business or other interactions within" Kansas.  *Id.*  In fact, plaintiff's allegations suggest that Ms. Gereaux wanted nothing to do with plaintiff's activities in Kansas.  When plaintiff spoke with Ms. Gereaux over the phone, she "constantly thwarted . . . efforts on her end," "was generally not forthcoming during the communication," and "refused to assist[.]"

---

[3]     *Shrader v. Biddinger*, 633 F.3d 1235 (10th Cir. 2011).

Doc. 43 at 11–13 (Am. Compl. ¶ 35).  Also, in *Clear Spring* the court reasoned that the agent

"directly communicated" with the Kansas-based customer.  *Clear Spring*, 2023 WL 6123741, at

*6.  Here, the Amended Complaint doesn't specify whether plaintiff called Ms. Gereaux or vice

versa.  But it does identify that Ms. Gereaux sent plaintiff a single email in response to earlier

emails plaintiff had sent to Ms. Gereaux.  Doc. 43 at 14 (Am. Compl. ¶ 35).  While these

interactions show some contact with plaintiff in Kansas, these allegations fail to plead that Ms.

Gereaux affirmatively reached into Kansas, seeking to financially benefit from its citizens, in a

fashion similar to the agent's conduct in *Clear Spring*.

     Plaintiff counters that the telephone and email conversations "were part and parcel of

[Ms. Gereaux's] fraud by concealment/nondisclosure[.]"  Doc. 71 at 12 (emphasis omitted).  The

communications thus "constituted instances and the continuation of tortious acts" because Ms.

Gereaux failed to affirmatively reveal that she and the Chin Defendants defrauded and exploited

Richard.  *Id.*  Put simply, plaintiff contends that Ms. Gereaux concealed her wrongdoing, so the

calls and email create a cause of action for plaintiff's conspiracy claims.  But that argument fails

as well because concealment isn't part of the underlying conspiracy, and thus, doesn't qualify as

forum contact.

     "Acts of covering up, even though done in the context of a mutually understood need for

secrecy, cannot themselves constitute proof that concealment of the crime after its commission

was part of the initial agreement among the conspirators."  *Grunewald v. United States*, 353 U.S.

391, 402 (1957); *United States v. Silverstein*, 737 F.2d 864, 867 (10th Cir. 1984) ("The duration

of a conspiracy does not extend to attempts to conceal the crime." (citing *Grunewald*, 353 U.S. at

399–406)).  This concept applies equally to civil conspiracy claims.  *See Cockrum v. Donald J.*

*Trump for President, Inc.*, 319 F. Supp. 3d 158, 182 (D.D.C. 2018) (noting that "courts have

applied *Grunewald* and its progeny to civil conspiracies" and holding that "acts of concealment that follow completion of the conspiracies' main objective are generally not considered to be part of the conspiracy"); *Bishop v. Henry Modell & Co.*, No. 08 CIV. 7541, 2009 WL 3762119, at *12 (S.D.N.Y. Nov. 10, 2009) ("Although *Grunewald* involved a criminal conspiracy, the Court's logic applies with equal force to plaintiff's [28 U.S.C. § 1985] allegations here."), *aff'd*, 422 F. App'x 3 (2d Cir. 2011).  Because "the acts of covering up can by themselves indicate nothing more than that the conspirators do not wish to be apprehended—a concomitant, certainly, of every crime since Cain attempted to conceal the murder of Abel from the Lord"— Ms. Gereaux's failure to reveal the alleged conspiracy during her telephone and email communication doesn't count as an act contributing to the underlying conspiracy.  *Grunewald*, 353 U.S. at 405–06.

To conclude, plaintiff's alleged facts fail to support a conclusion that Ms. Gereaux purposefully directed her actions towards Kansas.  Plaintiff thus fails *Dudnikov*'s three-step test for minimum contacts at prong two.  The court thus lacks personal jurisdiction over Ms. Gereaux.  Because plaintiff has failed to establish a necessary element for the minimum contacts required for personal jurisdiction, the court need not evaluate the third *Dudnikov* prong, or whether plaintiff has made a prima facie showing of personal jurisdiction.  Nonetheless, the court briefly addresses why principles of fairness and justice support granting Ms. Gereaux's Motion to Dismiss for lack of personal jurisdiction.

## 2.    Fair Play and Substantial Justice

Also, exercising personal jurisdiction over Ms. Gereaux would offend traditional notions of fair play and substantial justice.  Ms. Gereaux argues that personal jurisdiction in Kansas would burden her because she currently resides in Arizona.  Doc. 69-1 at 1 (Gereaux Aff. ¶ 3).  Ms. Gereaux also points out that she's never been to Kansas.  *Id.* (Gereaux Aff. ¶ 5).  She

contends that Washington has a significantly greater interest in litigating this matter because Ms. Gereaux has no connection to Kansas and the "gravamen of the amended complaint concerns purported events that allegedly occurred in Washington." Doc. 69 at 13. Plaintiff disagrees. Doc. 71 at 16, n.12. But he doesn't directly respond to Ms. Gereaux's points. Instead, plaintiff asserts that Richard's "financial ruination . . . would leave him the responsibility of a Kansan"— presumably, referring to plaintiff himself. *Id.* He maintains that "it is beyond doubtful that the interstate system would benefit from allowing the citizenry of Kansas to be burdened by such wrongdoing, or that the shared interest of the several states would be benefitted." *Id.*

Ms. Gereaux has the better of the argument. While plaintiff lives in Kansas and Richard briefly lived in Kansas before he passed, this case mostly involves Washington defendants and focuses on events that occurred in Washington: Richard's $262,252 investment with Washington defendants while living in Washington, the sale of Richard's house in Washington, and the alleged theft of Richard's safe and its contents in Washington. Plaintiff identifies no reason why he can't vindicate his claims in Washington. Notions of justice counsel the court that Washington, much more so than Kansas, has an interest in litigating this case.

The court thus concludes that it lacks personal jurisdiction over Ms. Gereaux because the Amended Complaint fails to allege facts that could establish she had sufficient minimum contacts with Kansas. Principles of equity and justice support this conclusion. The court next evaluates the Chin Defendants' Motion to Dismiss (Doc. 54) for lack of personal jurisdiction.

**B.      Specific Jurisdiction Over the Chin Defendants**

The Chin Defendants also argue that this court lacks personal jurisdiction over them. The claims brought against the Chin Defendants (claims on a promissory note (Count I), for money loaned (Count II), and for various torts (Counts III–VII)) all sound in tort. Doc. 45 at 18–27

18

(Am. Compl. ¶¶ 50–107). So, the parties debate whether the Chin Defendants meet the minimum contacts test as applied to torts. *See Dudnikov*, 514 F.3d at 1072.

### 1.    Minimum Contacts

The Chin Defendants' minimum contacts arguments fall into two buckets.

In the first bucket, the Chin Defendants argue that plaintiff fails to allege any facts connecting them to Kansas. Doc. 55 at 7–9. They're right. No facts in the Amended Complaint allege that the Chin Defendants had any interactions with others in Kansas. *See generally* Doc. 43. Instead, in his Response, plaintiff connects the Chin Defendants to Kansas solely through their alleged co-conspirator's actions affecting the state—Ms. Gereaux. Doc. 58 at 12–14. Plaintiff argues that, under a theory of conspiracy jurisdiction, Ms. Gereaux's acts, *i.e.*, her communications with plaintiff in Kansas, transpose to the Chin Defendants, thus satisfying the requisite minimum contacts. But plaintiff asserts Counts I and II—the counts related to Richard's investment—against the Chin Defendants only and Count III doesn't allege a conspiracy. So, even if the court accepts plaintiff's conspiracy jurisdiction argument, it still lacks personal jurisdiction over the Chin Defendants on Counts I–III because the Amended Complaint fails to allege a connection between the Chin Defendants and Kansas on these claims—through Ms. Gereaux or otherwise.

In the second bucket, the Chin Defendants assert the court lacks personal jurisdiction based on the claims in Counts IV–VII because these claims rely on a flawed theory of conspiracy jurisdiction. Doc. 55 at 9–12. Under plaintiff's conspiracy jurisdiction theory, the court has personal jurisdiction over the Chin Defendants because they participated in a conspiracy with Ms. Gereaux. And Ms. Gereaux communicated with plaintiff while plaintiff was located in Kansas. Plaintiff extends Ms. Gereaux's communication to the Chin Defendants, claiming that the calls and email create minimum contacts for the Chin Defendants as well. Doc. 58 at 12–13.

19

But there's a problem with this argument. As the court just explained in Section IV.A.1., Ms. Gereaux's communications with plaintiff while he was in Kansas don't provide sufficient minimum contacts for jurisdiction over Ms. Gereaux. So, it stands to reason that the same allegation can't supply minimum contacts for her alleged co-conspirators. Plaintiff's argument thus fails. The court lacks personal jurisdiction over the Chin Defendants.

The court concludes that it lacks personal jurisdiction over the Chin Defendants. So, it grants the Chin Defendants' Motion to Dismiss for lack of personal jurisdiction. But out of caution, the court next assesses if principles of fairness and justice support granting the Chin Defendants' motion.

### 2.    Fair Play and Substantial Justice

For reasons similar to the court's analysis of Ms. Gereaux's Motion to Dismiss, notions of fair play and substantial justice also counsel that the court shouldn't exercise personal jurisdiction over the Chin Defendants. The Chin Defendants assert that it would be burdensome for them to litigate in Kansas because they're all Washington residents. Doc. 55 at 12–13. Plaintiff doesn't controvert this point. *See* Doc. 58 at 14–16. The Chin Defendants also contend that Washington has a larger interest in resolving this matter than Kansas because the allegedly fraudulent events happened there. Doc. 55 at 12–13. Plaintiff disagrees that all relevant events occurred in Washington, pointing once more to Ms. Gereaux's communications with plaintiff while he was in Kansas. Doc. 58 at 14–16. But, as the court has explained already, these communications don't count as part of the fraudulent conspiracy. Plaintiff has identified no reason why it would unfairly burden him to litigate in Washington, or why he can't vindicate his claims, there. The court thus concludes that principles of justice and fairness weigh against this court exercising personal jurisdiction here over the Chin Defendants.

## V.        Motions to Dismiss for Improper Venue

Both Ms. Gereaux and the Chin Defendants filed Motions to Dismiss for improper venue, too.  Doc. 54; Doc. 68.  Where personal jurisdiction is lacking, so too is proper venue.  *See* 28 U.S.C. § 1391 (providing that venue is proper in any district where all defendants are subject to personal jurisdiction).  Because the court concludes that personal jurisdiction doesn't exist in Kansas, plaintiff's claims against all defendants also are subject to dismissal for lack of proper venue.  *See id.*; *see also In re Syngenta AG MIR 162 Corn Litig.*, No. 14-md-2591, 2016 WL 2866166, at *8 (D. Kan. May 17, 2016) ("Accordingly, because personal jurisdiction is lacking here, these plaintiffs' claims are also subject to dismissal for lack of venue, and the underlying motion to dismiss is granted on that basis as well.").  The court thus also grants defendants' Motions to Dismiss under Fed. R. Civ. P. 12(b)(3).

## VI.       Conclusion

In conclusion, the court grants Ms. Gereaux's Motion to Dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2).  Doc. 68.  The court also grants the Chin Defendants' Motion to Dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2).  Doc. 54. Plaintiff fails to allege facts establishing defendants' minimum contacts to the state of Kansas. The court also grants defendants' Motions to Dismiss for improper venue.  Doc. 54; Doc. 68. The court thus dismisses plaintiff's claims against all defendants without prejudice.  *See Birch v. Sprint/Nextel Corp.*, 675 F. App'x 821, 824 (10th Cir. 2017) (holding that district court should've dismissed without prejudice where it lacked personal jurisdiction over defendant); *see also Hollander v. Sandoz Pharms. Corp.*, 289 F.3d 1193, 1216 (10th Cir. 2002) (same).

**IT IS THEREFORE ORDERED THAT** defendants Alan Chin, Lillian Yuen, Enviroguard, LLC, and Millennium Green, LLC's Motion to Dismiss (Doc. 54) is granted.

**IT IS FURTHER ORDERED THAT** defendant Connie Gereaux's Motion to Dismiss (Doc. 68) is granted.

The court dismisses all claims against all defendants without prejudice.  The court thus directs the Clerk to close this case.

**IT IS SO ORDERED.**

**Dated this 24th day of June, 2024, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**
