IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**DOUGLAS BAKER as administrator of the estate of RICHARD BAKER,**

        **Plaintiff,**

v.

**ALAN CHIN, et al.,**

        **Defendants.**

Case No. 23-2103-DDC-TJJ

### MEMORANDUM AND ORDER

Plaintiff Douglas Baker is the administrator of the estate of his late cousin, Richard Baker.[1] In simple terms, plaintiff alleges that defendants Alan Chin, Lillian Yuen, Enviroguard, LLC, Millennium Green, LLC (collectively referred to as the "Chin Defendants"), and Connie Gereaux conspired to defraud Richard Baker of more than $270,000. Defendants allegedly capitalized on their personal and fiduciary relationships with Richard and exploited his mental decline into dementia. The court issued a Memorandum and Order granting defendants' Motions to Dismiss for lack of personal jurisdiction on June 24, 2024. Doc. 97.

Plaintiff now brings a Motion to Reinstate and Transfer to the Western District of Washington Pursuant to 28 U.S.C. §§ 1406(a) and 1631, and for Reconsideration Pursuant to Fed. R. Civ. P. 59(e) and Fed. R. Civ. P. 60(b). Doc. 99. Defendants object to plaintiff's motion. Docs. 101, 102. The court grants plaintiff's Motion for Reconsideration under Fed. R.

---

[1] The court refers to Richard Baker by his first name throughout this Memorandum and Order to avoid confusion with Douglas Baker. Any time the court uses "plaintiff," it refers to Douglas Baker in his role as the administrator of the estate.

Civ. P. 59(e). But the court denies plaintiff's Motion to Transfer. The interests of justice, as expressed in a multi-factor test, don't require the court to transfer this case. The court explains its rulings, below. But first, the court recites the relevant factual background.

I.      **Background**

    A.      **Factual History**

The court assumes familiarity with its recent Memorandum and Order (Doc. 97), in which it recited the facts in detail. So, the court briefly overviews just the facts relevant to the current motions, all taken from plaintiff's Amended Complaint (Doc 43).

*The Parties*

In 2018, Richard Baker lived in Washington state as a retired chiropractor. Doc. 43 at 4–5, 14 (Am. Compl. ¶¶ 15, 17, 35). Though he was retired and suffered from dementia, Richard continued to treat patients, one of whom was defendant Lillian Yuen. *Id.* at 4 (Am. Compl. ¶¶ 15–16). Ms. Yuen and her husband, defendant Alan Chin, own a company called Enviroguard, LLC. *Id.* at 1–2 (Am. Compl. ¶¶ 3–4). Mr. Chin also owned a company called Millennium Green, LLC. *Id.* at 3 (Am. Compl. ¶ 10). Ms. Yuen and Mr. Chin live in Washington and their companies are Washington limited liability companies. *Id.* at 1, 3 (Am. Compl. ¶¶ 3–4, 9–10).

*The Alleged Willard's Water Conspiracy*

Richard was a proponent of a product called Willard's Water and recommended it to his patients. *Id.* at 5 (Am. Compl. ¶ 17). Ms. Yuen and Mr. Chin told Richard that they could market Willard's Water to their contacts in China. *Id.* at 5 (Am. Compl. ¶¶ 17–18). In November 2018, Richard endorsed a check for $262,252.25 to Ms. Yuen and Mr. Chin for deposit in Enviroguard's account. *Id.* (Am. Compl. ¶ 19). He intended for that money to establish a Willard's Water distribution network in China. *Id.* (Am. Compl. ¶ 20). Ms. Yuen

and Mr. Chin executed a promissory note for $262,252.25 on behalf of Enviroguard, promising to repay Richard and make 24 monthly payments of $2,000 in interest. *Id.* at 19 (Am. Compl. ¶¶ 51–52). Ms. Yuen and Mr. Chin paid each interest installment, but never repaid any of the principal amount of the note. *Id.* They never made a deal with Willard's Water. *Id.* at 7 (Am. Compl. ¶ 28). Instead, Richard's deposit ultimately went to Mr. Chin's company, Millennium Green. *Id.* at 10 (Am. Compl. ¶ 32).

### *The Alleged Misappropriation of Funds*

Richard's relationship with Ms. Yuen exceeded their business relationship. In June 2018, Ms. Yuen became Richard's power of attorney. *Id.* at 5, 7 (Am. Compl. ¶¶ 19 n.1, 25). During 2020, Ms. Yuen allegedly misappropriated Richard's personal funds in 2020 through this role. *Id.* at 17–18 (Am. Compl. ¶¶ 46–49).

### *Ms. Gereaux's Alleged Interference*

In either November 2018 or November 2020,[2] Ms. Yuen, Mr. Chin, and Linda Leong—Ms. Yuen's sister—introduced Richard to defendant Connie Gereaux. *Id.* at 2, 6–7 (Am. Compl. ¶¶ 7, 24). An intimate relationship developed between Richard and Ms. Gereaux. *Id.* In July 2021, Richard executed a power of attorney, making Ms. Gereaux, along with his two cousins—plaintiff Douglas Baker and Larry McEnroe—co-power of attorneys. *Id.* at 11 (Am. Compl. ¶ 35). Using Richard's power of attorney, Ms. Gereaux allegedly thwarted plaintiff's efforts to handle Richard's affairs—including access to his bank records and selling his house. *Id.* at 12–13, 15 (Am. Compl. ¶¶ 35, 37). She also allegedly tried to steal Richard's safe. *Id.* at 15–16 (Am. Compl. ¶¶ 38–39). Ms. Gereaux engaged in numerous telephone calls with plaintiff about Richard's affairs while plaintiff was in Kansas, where he lives. *Id.* at 11 (Am. Compl. ¶ 35).

---

[2]   Plaintiff references both years in his Amended Complaint. *See* Doc. 43 at 2, 6 (Am. Compl. ¶¶ 7, 24).

She also sent plaintiff an email about Richard's affairs while plaintiff was in Kansas. *Id.* at 14 (Am. Compl. ¶ 35).

Richard moved to a memory care facility in Lawrence, Kansas in October 2021. *Id*. at 1, 16–17 (Am. Compl. ¶¶ 1, 43). Plaintiff was granted guardianship of Richard in April 2022. *Id*. at 17 (Am. Compl. ¶ 45). Richard died on March 10, 2023, a few days after this suit was filed. Doc. 17-1.

### B. Procedural History

Plaintiff filed his original Complaint on March 6, 2023. Doc. 1. He filed an Amended Complaint (Doc. 43) on September 7, 2023, asserting seven claims. Counts I and II name Ms. Yuen, Mr. Chin, and Enviroguard for action on a promissory note (Count I) and action for money loaned (Count II). Doc. 43 at 18–19 (Am. Compl. ¶¶ 50–55). The other five claims name all defendants,[3] suing them for: negligent misrepresentation (Count III); fraud by affirmative misrepresentation (Count IV); fraud by nondisclosure (Count V); breach of fiduciary duty (Count VI); and conversion (Count VII). *Id.* at 19–27 (Am. Compl. ¶¶ 56–107).

The court granted defendants' Motions to Dismiss for lack of personal jurisdiction and entered judgement on June 24, 2024. Doc. 97; Doc 98 (Judgment). On July 8, 2024, plaintiff filed a Motion to Reinstate and Transfer to the Western District of Washington Pursuant to 28 U.S.C. §§ 1406(a) and 1631, and for Reconsideration Pursuant to Fed. R. Civ. P. 59(e) and Fed. R. Civ. P. 60(b). Doc. 99. Defendants object to plaintiff's motion. Docs. 101, 102. The court grants the portion of plaintiff's motion seeking reconsideration under Fed. R. Civ. P. 59(e). But

---

[3]     Plaintiff voluntarily dismissed two of the named defendants in these counts. On November 3, 2023, plaintiff dismissed Linda Leong and Michael Leong under Fed. R. Civ. P. 41(a)(1)(A)(i). *See* Doc. 63.

4

the court denies plaintiff's request for transfer. The court explains its rulings below, starting with plaintiff's request to reconsider.

## II. Motion for Reconsideration

In its previous Order, the court dismissed all claims against all defendants without prejudice for lack of personal jurisdiction. Doc 97. Plaintiff asks the court to reconsider that judgment. Doc. 99 at 1. Although dismissal for lack of personal jurisdiction is without prejudice, it "finally disposes of the case"—but not the claims within it—"so that it is not subject to further proceedings," making the judgment "final and appealable." *Gould v. Wyse*, 19-CV-00382 WJ/JFR, 2022 WL 2116705, at *1 (D.N.M. June 13, 2022). Motions to reconsider "'dispositive' orders or judgments" are governed either by Fed. R. Civ. P 59(e) or 60.[4] *Coffeyville Res. Refin. & Mktg., LLC v. Liberty Surplus Ins. Corp.*, 748 F. Supp. 2d 1261, 1264 (D. Kan. 2010). The court begins by evaluating which Rule governs here.

### A. Rule 59(e) or Rule 60

Plaintiff asks the court to reconsider its judgment under Fed. R. Civ. P. 59(e) and 60(b). The court's first order of business is to determine which of these Rules fits this case's procedural posture. A "motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law. It is not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing." *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000) (citations omitted). The Federal Rules of Civil Procedure don't explicitly recognize motions to reconsider. *Computerized Thermal*

---

[4] Plaintiff correctly asserts that Local Rule 7.3 doesn't apply here because it governs motions not recognized under Fed. R. Civ. P. 59(e) or 60. Or, in other words, it distinguishes between non-dispositive rulings as opposed to final judgments. *See Coffeyville Res. Ref. & Mktg., LLC*, 748 F. Supp. 2d at 1264; D. Kan. Rule 7.3.

*Imaging, Inc. v. Bloomberg, L.P.*, 312 F.3d 1292, 1296 n. 3 (10th Cir. 2002). So, courts construe them in one of two ways:

> [I]f filed within [28] days of the district court's entry of judgment, it is treated as a motion to alter or amend the judgment under Rule 59(e); if filed more than [28] days after entry of judgment, it is treated as a motion for relief from judgment under Rule 60(b).

*Id.*[5]

In addition to the timing of the motion, courts consider the movant's expressed justification. *Commonwealth Prop. Advocs., LLC v. Mortg. Elec. Registration Sys., Inc.*, 680 F.3d 1194, 1200 (10th Cir. 2011). The purpose of a Rule 59(e) motion "'is to correct manifest errors of law or to present newly discovered evidence.'" *Monge v. RG Petro-Mach. (Grp.) Co.*, 701 F.3d 598, 611 (10th Cir. 2012) (quoting *Webber v. Mefford*, 43 F.3d 1340, 1345 (10th Cir. 1994)). "'Grounds for granting a Rule 59(e) motion include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice.'" *Id.* (quoting *Somerlott v. Cherokee Nation Distribs., Inc.*, 686 F.3d 1144, 1153 (10th Cir. 2012)). Rule 59(e) "was adopted to make clear that the district court possesses the power to rectify its own mistakes in the period immediately following the entry of judgment." *White v. N.H. Dep't of Emp. Sec.*, 455 U.S. 445, 450 (1982) (quotation cleaned up). Consequently, the court has discretion to amend the judgment where the court sees a "need to correct clear error or prevent manifest injustice." *Servants of Paraclete*, 204 F.3d at 1012.

The grounds for granting a Rule 60(b) motion differ. They include "mistake, inadvertence, surprise, or excusable neglect, . . . newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under 59(b)," and "any

---

[5] In 2009, the Advisory Committee explained why it expanded Rule 59(e)'s post-judgment motion period from ten to 28 days. Fed. R. Civ. P. 59 advisory committee's note to 2009 amendment. The court thus modifies this block quote from *Computerized Thermal* to substitute the 28-day deadline for the ten-day deadline in effect when the Circuit decided this case.

other reason that justifies relief." Fed. R. Civ. P. 60(b); *Commonwealth Prop. Advocs.*, 680 F.3d at 1200 (quoting Rule 60(b)). A party must move under Rule 60(b) within a "reasonable" time, and, depending on the asserted justification, "no more than a year after the entry of judgment[.]" Fed. R. Civ. P. 60(c)(1).

Here, plaintiff asserts that "Rule 59(e) and Rule 60(b) both provide an additional mechanism" for reconsidering this case. Doc. 100 at 5. The court determines that plaintiff's motion more appropriately falls under Rule 59(e). Plaintiff's Motion for Reconsideration (Doc. 99) was filed 14 days after entry of judgment. *See* Doc. 98 (showing judgment entered on June 24, 2024); Doc. 99 (showing motion filed on July 8, 2024). It thus satisfies Rule 59(e)'s requirement that a "motion to alter or amend a judgment must be filed no later than 28 days after the entry of judgment." Fed. R. Civ. P. 59(e). Plaintiff also satisfies one of the grounds warranting a motion to reconsider under 59(e): "the need to correct clear error or prevent manifest injustice." *Servants of Paraclete*, 204 F.3d at 1012. Plaintiff thus satisfies both the time and justification requirements of that Rule. The court concludes that its earlier Memorandum and Order erred by dismissing plaintiff's claims for lack of personal jurisdiction without first considering transfer. The court repairs its error, next.

### B. Requirement to Evaluate Transfer

In *Trujillo v. Williams*, the Tenth Circuit established that when a court dismisses a case for lack of personal jurisdiction, it must express whether it "evaluated the possibility of transferring [plaintiff's] claims under § 1631," and provide "reasons for dismissing rather than transferring." 465 F.3d 1210, 1223 (10th Cir. 2006) (remanding to the district court for a determination of whether the plaintiff's claims should be transferred rather than dismissed). Given *Trujillo*, the court's earlier Memorandum and Order (Doc. 97) erred by not providing reasons for dismissing rather than transferring. Reconsideration now under Rule 59(e) rectifies

7

that error.  The court thus grants the portion of plaintiff's motion asking the court to reconsider its previous ruling.  And the court addresses the missing question next—should the court transfer plaintiff's claims instead of dismissing them?

### III.     Motion to Transfer

Plaintiff asks the court to reinstate and transfer his claims to the Western District of Washington under 28 U.S.C. §§ 1406(a) and 1631.  Doc. 100 at 1.  The court begins its analysis by reciting the standard courts employ to evaluate transfer.  The court first decides whether § 1406(a) or § 1631 provides the governing law.

#### A.     Legal Standard

"A court may *sua sponte* cure jurisdictional and venue defects by transferring a suit under the federal transfer statutes, 28 U.S.C. §§ 1406(a) and 1631, when it is in the interests of justice." *Trujillo*, 465 F.3d at 1222.  The Tenth Circuit has "directed that, after the enactment of § 1631, where the court determines that it lacks jurisdiction and the interests of justice require transfer rather than dismissal, 'the correct course is to transfer the action pursuant to § 1631'" rather than § 1406(a).  *Id.* at 1223 (quotation cleaned up) (quoting *Ross v. Colo. Outward Bound Sch., Inc.*, 822 F.2d 1524, 1527 (10th Cir. 1987)).  The court thus considers whether it should transfer plaintiff's claims under § 1631.

> Section 1631 provides that when a
>
> court finds that there is a want of jurisdiction, the court *shall, if it is in the interest of justice*, transfer such action or appeal to any other such court . . . in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred.

28 U.S.C. § 1631 (emphasis added).

8

The Tenth Circuit has consulted three factors for determining whether transfer, rather than dismissal, is in the interest of justice under § 1631. These factors are: (1) whether "the new action would be time barred," (2) whether "the claims are likely to have merit," and (3) whether "the original action was filed in good faith rather than filed after 'plaintiff either realized or should have realized that the forum in which he or she filed was improper.'" *Trujillo*, 465 F.3d at 1223 n.16 (quoting *Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1544 (10th Cir. 1996)).

B.    Analysis

When considering transfer under § 1631, the court must "first satisfy itself that the proposed transferee court has personal jurisdiction over the parties." *Viernow v. Euripides Dev. Corp.*, 157 F.3d 785, 793 n.16 (10th Cir. 1998). The court applies the transferee jurisdiction's law in this determination. *See id.* at 794. Here, plaintiff's requested transfer would resituate the case in the Western District of Washington. Doc. 100 at 1. Under Washington law, personal jurisdiction exists when "the applicable long-arm statute is satisfied" and when "the assertion of personal jurisdiction satisfies due process." *Cray Inc. v. Raytheon Co.*, 179 F. Supp. 3d 977, 983 (W.D. Wash. 2016). Washington's long-arm statute "permits the exercise of jurisdiction to the full extent of the Due Process Clause of the United States Constitution." *Corker v. Costco Wholesale Corp.*, 585 F. Supp. 3d 1284, 1290 (W.D. Wash. 2022) (citing *Easter v. Am. W. Fin.*, 381 F.3d 948, 960 (9th Cir. 2004)).

"A court may exercise personal jurisdiction over a defendant consistent with due process only if he or she has 'certain minimum contacts' with the relevant forum 'such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."'" *Menken v. Emm*, 503 F.3d 1050, 1056 (9th Cir. 2007) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). General personal jurisdiction exists when "a

9

defendant's contacts with a forum are so substantial, continuous, and systematic that the defendant can be deemed to be 'present' in that forum for all purposes[.]" *Id.* at 1056–57.

In the absence of general jurisdiction, a court may exercise specific jurisdiction over a non-resident defendant "based on the relationship between the defendant's forum contacts and the plaintiff's claims." *Id.* at 1057. The Ninth Circuit[6] uses a three-prong test to analyze specific jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Id.* (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004)).

Although the parties did not brief this issue, the record indicates that the Western District of Washington properly can exercise personal jurisdiction over defendants. Because the Chin Defendants reside in the state of Washington, the Western District of Washington has general personal jurisdiction over them. *See* Doc. 54 at 2. Defendant Gereaux "currently resides in Arizona and resided in Washington at all times relevant to the allegations in the Complaint[.]" Doc. 68 at 1. So, while the Western District of Washington no longer has general jurisdiction over non-resident Gereaux, she purposefully directed activities at Richard Baker while he resided in Washington. *See* Doc. 69 at 2 (explaining Ms. Gereaux's contact with Richard in

---

[6] The transferee court—the Western District of Washington—a subordinate court of the Ninth Circuit Court of Appeals, so the court's jurisdictional analysis applies Ninth Circuit caselaw. *See Viernow*, 157 F.3d at 793.

Washington). What's more, plaintiff's claims arise out of and relate to Ms. Gereaux's activities in Washington. And neither Ms. Gereaux, nor the record, present any reason why the Western District of Washington's exercise of jurisdiction over her would not "comport with fair play and substantial justice[.]" *Menken*, 503 F.3d at 1057.[7]

Having established that the Western District of Washington may exercise personal jurisdiction over the parties, the court next analyzes whether transfer is in the interest of justice under the *Trujillo* factors.

### 1. Statute of Limitations

Recall that the first *Trujillo* factor considers whether the statute of limitations would bar plaintiff's action if filed in the proper forum. When the statute of limitations would bar a new action, this factor favors transfer rather than dismissal. *Trujillo*, 465 F.3d at 1223 n.16 (citing *Haugh v. Booker*, 210 F.3d 1147, 1150 (10th Cir. 2000)).

Plaintiff states that his fraud, negligent misrepresentation, breach of fiduciary duty, and conversion claims "will be threatened by statutes of limitations if the case is not transferred." Doc. 100 at 6. Under Washington law, actions for relief based on fraud must be filed within three years of the aggrieved party's discovery of the necessary facts. Wash. Rev. Code § 4.16.080(4) (2011). Likewise, negligent misrepresentation actions "must be commenced within three years of discovery of the misrepresentation." *Davidheiser v. Pierce Cnty.*, 960 P.2d 998, 1003 n.5 (Wash. Ct. App. 1998) (citing Wash. Rev. Code 4.16.080(4)). Breach of fiduciary duty and conversion claims share the same three-year limitation period. *Hudson v. Condon*, 6

---

[7] If plaintiff can satisfy the first two prongs, "'the burden then shifts to the defendant to "present a compelling case" that the exercise of jurisdiction would not be reasonable.'" *Menken*, 503 F.3d at 1057 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–78 (1985)). Ms. Gereaux has not contested the proposition that the Western District of Washington would have personal jurisdiction over her in this case.

P.3d 615, 619 (Wash. Ct. App. 2000) (citing Wash. Rev. Code 4.16.080(2), (4)). For breach of fiduciary duty claims, the three-year statute of limitations "begins to run when the client discovers 'or in the exercise of reasonable diligence should have discovered' all the facts necessary to support each element of its cause of action." *Paulsell v. Gaffney*, 200 Wash. App. 1041, 2017 WL 4155367, at *4 (Wash. Ct. App. Sept. 18, 2017) (quoting *Janicki Logging & Const. Co. v. Schwabe, Williamson, & Wyatt, P.C.*, 37 P.3d 309, 312 (Wash. Ct. App. 2001)). Similarly, when there is a delay in discovering a conversion, which was "not caused by the plaintiff sleeping on his rights," a court may apply the discovery rule—tolling the accrual of a conversion claim "until the plaintiff knows or, through the exercise of due diligence, should have known all the facts necessary to establish a legal claim." *Crisman v. Crisman*, 931 P.2d 163, 165–66 (Wash. Ct. App. 1997). Accordingly, plaintiff's fraud and negligent misrepresentation claims accrued when plaintiff discovered the necessary facts, and the breach of fiduciary duty and conversion claims accrued when plaintiff discovered or should have discovered the necessary facts.

It is unclear exactly when plaintiff discovered, or reasonably should have discovered, the facts necessary to bring his claims. Plaintiff identifies the three-year statutes of limitation for these claims but fails to explain when the claims accrued or why those limitations bar any of them. *See* Doc. 100 at 7–8. As such, plaintiff didn't shoulder his burden to demonstrate that the statute of limitations will bar his claims if refiled where personal jurisdiction exists. His Motion to Transfer provides repeated, conclusory statements that dismissal will make some of his claims untimely. *See, e.g.*, Doc. 100 at 1 ("[T]here is a danger that the statute of limitations would preclude refiling in another federal district following dismissal without prejudice."); *id.* at 2, 6 ("In the present case . . . a number of significant claims will be threatened by statutes of

limitations if the case is not transferred."). And it recites Washington's statutes of limitations for several of his claims. Doc. 100 at 7–8. Other courts have held such conclusory statements insufficient to warrant transfer. *See King v. United States*, No. 21-cv-01421-CMA-NYW, 2022 WL 889173, at *3 (D. Colo. Mar. 25, 2022) ("Plaintiff merely asserts that . . . the *potential* for statutes of limitations to expire, support a transfer. This conclusory statement is insufficient to persuade the court that transfer is warranted under § 1631." (emphasis in original and quotation cleaned up)); *Frontier Astronautics, LLC v. Frontier Aerospace Corp.*, No. 19-cv-02186-RM-MEH, 2020 WL 1234896, at *10 (D. Colo. Mar. 13, 2020) (recommending district judge deny transfer where there's "no argument nor evidence indicating whether Plaintiff's claims would be time-barred") *report and recommendation adopted as modified*, 2020 WL 5406125 (D. Colo. Sept. 9, 2020).

Plaintiff never provides any argument about when his claims' statutes of limitations started to run. *See generally* Doc. 100. Indeed, his Amended Complaint contends that plaintiff didn't discover the facts necessary to bring the above claims until "shortly before" filing this lawsuit on March 5, 2023. *See* Doc. 43 at 21, 22, 25, 26, 27 (Am. Compl. ¶¶ 62, 75, 91, 100, 107). According to that timeline, plaintiff's claims would remain timely until winter 2026.[8] And

---

[8]  Alternatively, plaintiff's claims may remain timely because Richard Baker's disability tolled the statute of limitations. Washington law provides that

> [I]f a person entitled to bring an action mentioned in this chapter, . . . be at the time the cause of action accrued either under the age of eighteen years, or incompetent or disabled to such a degree that he or she cannot understand the nature of the proceedings, such incompetency or disability as determined according to chapter 11.130 RCW, . . . the time of such disability shall not be a part of the time limited for the commencement of action.

Wash. Rev. Code § 4.16.190 (2023). The Washington Supreme Court has interpreted this provision to toll statutes of limitation starting at the time of a plaintiff's disability, regardless of the appointment of a guardian. *See Young v. Key Pharms., Inc.*, 770 P.2d 182, 187 (Wash. 1989) (en banc). Disability is defined as "a physical or mental impairment that substantially limits one or more major life activities." Wash. Rev. Code § 11.130.700 (202).

13

plaintiff has offered no other timeline. The court can't (and won't) develop plaintiff's statute of limitations argument for him. *See Lebahn v. Owens*, 813 F.3d 1300, 1307–08 (10th Cir. 2016) (clarifying that a plaintiff mustn't "ignore his obligation to bring relevant issues to the district court's attention. It is not the court's job to comb the record in order to make [a party's] arguments for him." (quotation cleaned up)). So, the first *Trujillo* factor favors dismissal.

### 2. Merit

Next, take *Trujillo*'s second factor. When claims are likely to have merit, this factor favors transfer rather than dismissal. *Trujillo*, 465 F.3d at 1223 n.16. Courts may "consider the consequences of a transfer by taking 'a peek at the merits' to avoid raising false hopes and wasting judicial resources that would result from transferring a case which is clearly doomed." *Haugh*, 210 F.3d at 1150 (citing *Phillips v. Seiter*, 173 F.3d 609, 610–11 (7th Cir.1999)). Here, a "peek at the merits" suggests that plaintiff's claims may have some merit. That is, they do not resemble the types of frivolous claims that courts have determined are clearly doomed. *See, e.g.*, *Diaz-Oropeza v. Riverside Red X, Inc.*, No. 11-2012-JTM, 2011 WL 2580167, at *5 (D. Kan. June 28, 2011) (concluding that plaintiff's claim that defendants caused him injury by "accus[ing] him of illegally parking in a handicapped stall" was not likely to have merit); *Young v. State Gov't of Okla.*, 98 F. App'x 760, 764 (10th Cir. 2004) (concluding that complaint was unlikely to have merit where plaintiff "complains of the results of an ordinary divorce proceeding and an ordinary contempt proceeding following failure to pay alimony"). The court need not be certain that all claims have merit. *See, e.g.*, *Crawley v. Gasaway*, No. 24-cv-2021-JAR-ADM, 2024 WL 3271476, at *2 (D. Kan. July 2, 2024) ("[W]hile the court has doubts as to

---

No party addresses this issue. And the record does not set forth a clear timeline of Richard's dementia or its progression. Nor has either party cited any caselaw clearly indicating that § 4.16.190 applies to cases like this one. And the court found none. So, the court doesn't decide whether Richard's dementia would toll the statutes of limitation for plaintiff's claims.

the merits of some of [plaintiff's] claims against Defendants, the court cannot say at this point in the proceedings that all of [plaintiff's] claims are meritless").

If plaintiff's allegations are true—and the court doesn't opine whether they are because it has no way to know—it seems that at least some of his claims have merit. Plaintiff presents records that corroborate, in part, some of his allegations. *See, e.g.*, Doc. 43-1 (the promissory note for $262,252.25); Doc. 43-2 (the loan agreement for the same amount); Doc. 43-3 (the check endorsed by Richard); Doc. 89-5 (a summary of loan payments and bounced checks). Moreover, defendants, while not admitting any of plaintiff's factual allegations, haven't provided the court with reason to doubt the merits of plaintiff's allegations. *See generally* Doc. 101. Defendants described plaintiff's claims as "speculative tort claims," but that's the closest they've come. *See id.* at 2. That conclusory statement does little to cast aspersions on the merit of plaintiff's claims. Because a cursory review of the record indicates that at least some of plaintiff's claims are potentially meritorious, this factor favors transfer rather than dismissal.

### 3. Good Faith

The third factor in analyzing whether to transfer or dismiss an action when there is a lack of personal jurisdiction is whether "the original action was filed in good faith rather than filed after 'plaintiff either realized or should have realized that the forum in which he or she filed was improper.'" *Trujillo*, 465 F.3d at 1223 n.16 (quoting *Trierweiler*, 90 F.3d at 1544). Based on the current record, it is questionable whether plaintiff's failure to file in the proper forum can be "excused as a good faith technical error." *Young v. State Gov't of Okla.*, 98 F. App'x at 764.[9]

---

[9] Plaintiff correctly points out that this factor appears to originate in the Tenth Circuit's statement of the defendant's argument in *Trierweiler*, which the *Trierweiler* court did not adopt. *See* 90 F.3d at 1544–45. Nevertheless, numerous Tenth Circuit opinions have adopted and applied this factor since, and thus the court must consider it, despite its perhaps mistaken origination. *See, e.g.*, *Trujillo*, 465 F.3d at 1223 n.16 (citing *Trierweiler*, 90 F.3d at 1544) (including good faith in transfer factors); *In re Cline*, 531 F.3d 1249, 1251 (10th Cir. 2008) (citing *Trujillo*, 465 F.3d at 1223 n.16) (same); *Grynberg v. Ivanhoe*

Plaintiff sets forth a strenuous—but ultimately losing—theory explaining why our court has personal jurisdiction over defendants. He claimed that Ms. Gereaux's telephone and email communications with him while he was in Kansas established sufficient minimum contacts to establish personal jurisdiction. *See* Doc. 97 at 11 (citing Doc. 58 at 10, 13; Doc 71 at 12–13). He also contended that those communications extended to the Chin Defendants because they allegedly conspired to defraud Richard. *See id.* (citing Doc. 58 at 10; Doc. 71 at 12). While some cases have concluded that telephone calls and emails created sufficient minimum contacts to establish personal jurisdiction, the communications in those cases arose in a commercial context. *See* Doc. 97 at 15 (citing *Clear Spring Property & Casualty Co. v. Arch Nemesis, LLC*, No. 22-2435-DDC-TJJ, 2023 WL 6123741 (D. Kan. Sept. 19, 2023)). Plaintiff should have known that Ms. Gereaux's communications, which were not commercial in nature, were not sufficient to establish personal jurisdiction.

Also, plaintiff's own statements call into doubt that he filed the present action in good faith. In the "Statement as to Possible Cause of Action" filed in Douglas County District Court, plaintiff stated that his attorney planned to "file the lawsuit in Federal Court in Kansas," but that it "will likely get removed to state court in Washington."[10] Doc. 56-4 at 3. This suggests plaintiff knew that Washington represented a more appropriate forum, and defendants would prefer to litigate in their home state. All the same, this comment doesn't suggest bad faith conclusively. That's because there "is at least some argument" for personal jurisdiction in

---

*Energy, Inc.*, 490 F. App'x 86, 108 (10th Cir. 2012) (same); *Faulkenburg v. Weir*, 350 F. App'x 208, 210 (same); *Young v. State Gov't of Okla.*, 98 F. App'x at 763–64 (citing *Trierweiler*, 90 F.3d at 1544) (same).

[10]  Plaintiff originally filed this document in state court. Defendants then attached it as an exhibit to their Motion to Dismiss. *See* Doc. 56-4. "The court may take judicial notice of state court documents." *Columbian Fin. Corp. v. Bowman*, 314 F. Supp. 3d 1113, 1119 (D. Kan. 2018). And so, the court takes judicial notice of Doc. 56-4 here.

Kansas based on sufficient minimum contacts, as the court already has discussed. *Grynberg v. Ivanhoe Energy, Inc.*, 666 F. Supp. 2d 1218, 1240 (D. Colo. 2009), *as corrected* (Jan. 28, 2010) ("[T]here is at least some argument that this case was filed in Colorado even though Plaintiffs should have known that jurisdiction was not proper. . . . [A]s these issues were at least somewhat difficult to resolve . . . this factor neither weighs in favor nor against transfer of the case."). This factor is thus neutral in the court's analysis.

### 4. Other Factors

The three *Trujillo* factors "are not necessarily exclusive." *Grynberg v. Ivanhoe Energy, Inc.*, 490 F. App'x 86, 109 (10th Cir. 2012). Courts may consider other factors—such as judicial economy. *See Grynberg*, 666 F. Supp. 2d at 1240 (concluding that judicial economy didn't favor transfer because the case had "not progressed beyond the issue of personal jurisdiction in Colorado, and therefore, little pleading and no discovery w[ould] need to be repeated" if refiled in the proper forum). Here, judicial economy likewise doesn't favor transfer. While the docket is somewhat lengthy, the parties' work to date has revolved primarily around personal jurisdiction and transfer issues. *See, e.g.*, Doc. 40; Doc 44; Doc. 55, Doc. 58; Doc. 69; Doc. 71. And it appears from the docket that the parties have conducted minimal discovery.

Courts also may consider whether either party raised the issue of transfer as an alternative to dismissal. *See, e.g.*, *Wingate v. Barkman Honey, LLC*, No. 19-cv-04074-HLT, 2020 WL 362647, at *4 n.4 (D. Kan. Jan. 22, 2020) (noting that "the fact that neither party requested transfer as an alternative to dismissal or otherwise raised this issue in the briefing" weighs against transfer). The parties did not request transfer as an alternative to dismissal, or even raise the issue at all before the court dismissed the case. *See generally* Doc. 54; Doc. 58; Doc. 68; Doc. 71 (not requesting or raising the issue of transfer). So, this factor also weighs against transfer.

17

Taking stock, only one factor favors transfer—plaintiff's claims likely have merit. The good faith factor is neutral. The other factors—the statute of limitations, judicial economy, and the parties' absent request—all favor dismissal. And so, the court denies plaintiff's Motion to Transfer as not required by the interests of justice here.

## IV.     Conclusion

The court recognizes its earlier Memorandum and Order (Doc. 97) erred by failing to consider transfer. To correct that error, the court reinstates this case and evaluates whether to transfer, instead of dismiss, this action. Having evaluated the three *Trujillo* factors and two more factors consistent with them, the court finds transfer unnecessary to uphold the interests of justice here.

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiff's Motion to Reinstate and Transfer to the Western District of Washington (Doc. 99) is granted in part and denied in part. The court grants plaintiff's Motion to Reinstate and reinstated the case to evaluate transfer. But the court denies plaintiff's Motion to Transfer. The court thus directs the Clerk of the Court to once again close this case.

**IT IS SO ORDERED.**

**Dated this 6th day of March, 2025, at Kansas City, Kansas.**

                                                                                          s/ Daniel D. Crabtree
                                                                                          **Daniel D. Crabtree**
                                                                                          **United States District Judge**